# EXHIBIT A

# Court of Common Pleas of Philadelphia County
## Trial Division
# Civil Cover Sheet

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| SIANI GORDON, ALIAS: ESTATE OF JAHSAD ATKINSON | NATIONAL RAILROAD PASSENGER CORPORATION D/B/A AMTRAK |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 222 BROOMALL STREET<br>CHESTER PA 19013 | 30TH STREET STATION<br>PHILADELPHIA PA 19104 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| WYDEIA KIMBLE, ALIAS: ESTATE OF AH'YIR WOMACK | CRISTIAN MEDINA |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 2723 LEHMAN STREET<br>CHESTER PA 19013 | C/O 30TH STREET STATION<br>PHILADELPHIA PA 19104 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
|  | KEYAH KING |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
|  | C/O 30TH STREET STATION<br>PHILADELPHIA PA 19104 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 12 | [X] Complaint   [ ] Petition Action   [ ] Notice of Appeal<br>[ ] Writ of Summons   [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| [ ] $50,000.00 or less<br>[X] More than $50,000.00 | [ ] Arbitration<br>[X] Jury<br>[ ] Non-Jury<br>[ ] Other: | [ ] Mass Tort<br>[ ] Savings Action<br>[ ] Petition | [ ] Commerce<br>[ ] Minor Court Appeal<br>[ ] Statutory Appeals | [ ] Settlement<br>[ ] Minors<br>[ ] W/D/Survival |

**CASE TYPE AND CODE**

20 - PERSONAL INJURY - OTHER

**STATUTORY BASIS FOR CAUSE OF ACTION**

RECEIVED
**AMTRAK** CLAIMS DEPARTMENT

APR 2 3 2025

via hand delivery
**PHILADELPHIA, PA**

**RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)**

FILED
PRO PROTHY

APR 17 2025

B. BALILONIS

**IS CASE SUBJECT TO COORDINATION ORDER?**

YES     NO

---

## TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: SIANI GORDON , WYDEIA KIMBLE

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| JONATHAN DANIEL. RUBINSTEIN | 123 S. BROAD STREET<br>SUITE 2250<br>PHILADELPHIA PA 19109 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (267)656-6895 | (215)545-8805 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 318138 | jrubinstein@mceldrewpurtell.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| JONATHAN RUBINSTEIN | Thursday, April 17, 2025, 09:10 am |

FINAL COPY (Approved by the Prothonotary Clerk)

## COMPLETE LIST OF DEFENDANTS:

1. NATIONAL RAILROAD PASSENGER CORPORATION D/B/A AMTRAK
   30TH STREET STATION
   PHILADELPHIA PA 19104
2. CRISTIAN MEDINA
   C/O 30TH STREET STATION
   PHILADELPHIA PA 19104
3. KEYAH KING
   C/O 30TH STREET STATION
   PHILADELPHIA PA 19104
4. KYLE MARTIN HANSON
   C/O 30TH STREET STATION
   PHILADELPHIA PA 19104
5. CHRISTOPHER EDGERTON
   C/O 30TH STREET STATION
   PHILADELPHIA PA 19104
6. DENNIS WINN
   C/O 30TH STREET STATION
   PHILADELPHIA PA 19104
7. SEAN GILLIAM
   C/O 30TH STREET STATION
   PHILADELPIHA PA 19104
8. SEAN HUGHES
   C/O 30TH STREET STATION
   PHILADELPHIA PA 19104
9. SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY
   1234 MARKET STREET
   PHILADELPHIA PA 19107
10. JOE DOE 1
    ADDRESS UNKNOWN
    PHILADELPHIA PA 19104
11. JOHN DOE 2
    ADDRESS UNKNOWN
    PHILADELPHIA PA 19104
12. JOHN DOE 3
    ADDRESS UNKNOWN
    PHILADELPHIA PA 19104

McEldrew Purtell

Jon D. Rubinstein, Esq.
Gregory R. Kiss, Esq.
Identification Nos. 318138, 324993
123 S. Broad Street, Suite 2250
Philadelphia, PA 19109
(215) 545-8800

Filed and Attested by the
Office of Judicial Records
17 APR 2025 09:40 am
R. BALILONTI

| | |
|---|---|
| **SIANI GORDON, Personal Representative and Administratrix of the ESTATE OF JAHAAD ATKINSON**<br>**222 Broomall Street**<br>**Chester, PA 19013,**<br><br>and<br><br>**WYDEIA KIMBLE, Personal Representative and Administratrix of the ESTATE OF AH'YIR WOMACK**<br>**2723 Lehman Street,**<br>**Chester, PA 19013,**<br>*Plaintiffs,*<br><br>v.<br><br>**NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a AMTRAK**<br>**30th Street Station**<br>**Philadelphia, PA 19104,**<br><br>and<br><br>**CRISTIAN MEDINA**<br>**c/o 30th Street Station**<br>**Philadelphia, PA 19104,**<br><br>and<br><br>**KEYAH KING**<br>**c/o 30th Street Station**<br>**Philadelphia, PA 19104,**<br><br>and<br><br>**KYLE MARTIN HANSEN**<br>**c/o 30th Street Station**<br>**Philadelphia, PA 19104,** | **PHILADELPHIA COUNTY**<br>**COURT OF COMMON PLEAS**<br><br>**TERM, 2025**<br>**NO.:**<br><br><br>**JURY TRIAL DEMANDED** |

1

and

**CHRISTOPHER EDGERTON**
c/o 30th Street Station
Philadelphia, PA 19104,

and

**DENNIS WINN**
c/o 30th Street Station
Philadelphia, PA 19104,

and

**SEAN GILLIAM**
c/o 30th Street Station
Philadelphia, PA 19104,

and

**SEAN HUGHES**
c/o 30th Street Station
Philadelphia, PA 19104,

and

**SOUTHEASTERN
PENNSYLVANIA
TRANSPORTATION AUTHORITY**
1234 Market Street
Philadelphia, PA 19107,

and

**JOHN DOE 1**
Address Unknown,

and

**JOHN DOE 2**
Address Unknown,

and

**JOHN DOE 3**
Address Unknown,

|  |  |
|---|---|
| ***Defendants.*** |  |

## NOTICE TO PLEAD

<table>
<tr>
<td>

*NOTICE*

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint & Notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION LAWYER REFERRAL SERVICE
ONE READING CENTER
PHILADELPHIA, PA 19107
215-238-6333

</td>
<td>

*AVISO*

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias deplazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de s persona. Sea avisado que si used no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y require que usted cumpla con todas las provisiones de esta demanda. Usted puede perder u otros derechos importantes para usted.

LLEVE ESTSASS DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO. VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PAPA AVAERIGUAR DONDE SE PAEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACION DE LICENCIADOS DE FILADELFIA
SERVICIO DE RFERENCIA DE ABOGADOS
ONE READING CENTER
FILADELFIA, PA 19107
215-238-6333

</td>
</tr>
</table>

3

Case ID: 250402241

## COMPLAINT – CIVIL ACTION

Plaintiffs, by and through their undersigned attorneys, McEldrew Purtell, bring this action against the above-named Defendants and allege at all times relevant and upon information and belief herein the following upon the causes of action set forth below:

### PARTIES

1.      Plaintiff, Siani Gordan, Personal Representative and Administratrix of the Estate of Jahaad Atkinson, is an adult citizen and resident of the Commonwealth of Pennsylvania residing at the above captioned address. She was granted letters of administration on June 20, 2023.

2.   .   Plaintiff, Wydeia Kimble, Personal Representative and Administratrix of the Estate of Ah'yir Womack, is an adult citizen and resident of the Commonwealth of Pennsylvania residing at the above captioned address. She was granted letters of administration on June 16, 2023.

3.      Defendant, National Railroad Passenger Corporation, d/b/a Amtrak ("Amtrak"), is a corporation or other business entity with a regular place of business at the above-captioned address.

4.      At all relevant times, Defendant Amtrak, has carried out, and continues to carry out substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania and specifically, Philadelphia County, through among other things the ownership, management, and operation of railroads and other real estate assets.

5.      At all times relevant, Defendant Amtrak was acting by and through its agents, servants, partners, corporate affiliates, corporate subsidiaries, owners, managers, workers, contractors, other subsidiaries and/or employees who were acting within the course and scope of their agency, service and/or employment with Defendant Amtrak.

6.      Defendant, Keyah King, is an adult citizen and resident of the Commonwealth of Pennsylvania working for Amtrak at the above captioned address.

4

7. Defendant, Kyle Martin Hansen, is an adult citizen and resident of the Commonwealth of Pennsylvania working for Amtrak at the above captioned address.

8. Defendant, Ryan Marley, is an adult citizen and resident of the Commonwealth of Pennsylvania working for Amtrak at the above captioned address.

9. Defendant, Christopher Edgerton, is an adult citizen and resident of the Commonwealth of Pennsylvania working for Amtrak at the above captioned address.

10. Defendant, Dennis Winn, is an adult citizen and resident of the Commonwealth of Pennsylvania working for Amtrak at the above captioned address.

11. Defendant, Sean Gilliam, is an adult citizen and resident of the Commonwealth of Pennsylvania working for Amtrak at the above captioned address.

12. Defendant, Sean Hughes, is an adult citizen and resident of the Commonwealth of Pennsylvania working for Amtrak at the above captioned address.

13. At all times relevant, Defendants King, Hansen, Edgerton, Winn, Gilliam, and Hughes were acting in the course and scope of their employment or agency for Defendant Amtrak.

14. Defendant, Southeastern Pennsylvania Transportation Authority ("SEPTA"), is a corporation or other business entity that is domestic registrant of the Commonwealth of Pennsylvania, with a regular place of business at the above-captioned address.

15. At all relevant times, Defendant SEPTA has carried out, and continues to carry out substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania and specifically, Philadelphia County, through among other things the ownership, management, and operation of railroads, subways, transportation services, and other real estate assets.

16. At all times relevant, Defendant SEPTA was acting by and through its agents, servants, partners, corporate affiliates, corporate subsidiaries, owners, managers, workers,

5

contractors, other subsidiaries and/or employees who were acting within the course and scope of their agency, service and/or employment with Defendant SEPTA.

17.     Defendant, John Doe 1, is an unknown individual, corporation, or other business entity, that sometime prior to April 29, 2023, was hired, retained, contracted, or otherwise selected by Defendant Amtrak and/or Defendant SEPTA, to build, erect, install, maintain or otherwise build fencing and other partitions at or around railroad tracks located at approximately 515 Flower Street and along the NE Corridor section of train tracks in the area of milepost 14 and 15 in Chester, PA.

18.     At all relevant times, Defendant John Doe 1 has carried out, and continues to carry out substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania and specifically, Philadelphia County, through ownership, execution and operation of its business.

19.     At all times relevant, Defendant John Doe 1 was acting by and through its agents, servants, partners, corporate affiliates, corporate subsidiaries, owners, managers, workers, contractors, other subsidiaries and/or employees who were acting within the course and scope of their agency, service and/or employment with Defendant John Doe 1.

20.     Defendant, John Doe 2, is an unknown individual, corporation, or other business entity, that sometime prior to April 29, 2023, was hired, retained, contracted, or otherwise selected by Defendant Amtrak and/or Defendant SEPTA, to consult on the building, erecting, designing, and installing of fencing and other partitions at or around railroad tracks located at approximately 515 Flower Street and along the NE Corridor section of train tracks in the area of milepost 14 and 15 in Chester, PA.

21.     At all relevant times, Defendant John Doe 2 has carried out, and continues to carry out substantial, continuous and systematic business activities in the Commonwealth of

6

Pennsylvania and specifically, Philadelphia County, through ownership, execution and operation of its business.

22. At all times relevant, Defendant John Doe 2 was acting by and through its agents, servants, partners, corporate affiliates, corporate subsidiaries, owners, managers, workers, contractors, other subsidiaries and/or employees who were acting within the course and scope of their agency, service and/or employment with Defendant John Doe 2.

23. Defendant, John Doe 3, is an unknown individual, corporation, or other business entity, that sometime prior to April 29, 2023, was hired, retained, contracted, or otherwise selected by Defendant Amtrak and/or Defendant SEPTA, to maintain, repair, or otherwise ensure the efficacy and safety of fencing and other partitions at or around railroad tracks located at approximately 515 Flower Street and along the NE Corridor section of train tracks in the area of milepost 14 and 15 in Chester, PA.

24. At all relevant times, Defendant John Doe 3 has carried out, and continues to carry out substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania and specifically, Philadelphia County, through ownership, execution and operation of its business.

25. At all times relevant, Defendant John Doe 3 was acting by and through its agents, servants, partners, corporate affiliates, corporate subsidiaries, owners, managers, workers, contractors, other subsidiaries and/or employees who were acting within the course and scope of their agency, service and/or employment with Defendant John Doe 3.

### JURISDICTION AND VENUE

26. At all times relevant hereto, the Defendants regularly conducted business within the Commonwealth of Pennsylvania with their principal places of business located at the above-captioned addresses.

7

27. Defendants, whether individually, and/or jointly and severally, systematically, regularly, and continuously conduct activities in Philadelphia County, which directly furthered and/or are, or were, essential to their respective or joint business objectives.

28. Jurisdiction and venue are proper in this Honorable Court in Philadelphia County, as Defendants regularly conduct business in this county and/or the action has been brought in a county in which venue may be laid against one or more Defendants.

29. Venue in this action is properly laid in Philadelphia County pursuant to Pennsylvania Rules of Civil Procedure Rules 1006 and 2179.

## FACTUAL ALLEGATIONS

30. On April 29, 2023, Plaintiffs' decedents, Jahaad Atkinson, Ah'yir Womack, and at least two other boys, H.D., and A.S., decided to walk to Veteran's Memorial Park, in Chester, PA, to shoot a BB gun at trees in the park and play at the park's playground.

31. At the time, Jahaad was 9 years old and Ah'yir was 12 years old.

32. For years before April 29, 2023, neighborhood kids would use the train tracks along Defendant Amtrak and Defendant SEPTA's NE Corridor, at or near Bridge No. 14.80 on Flower Street in Chester, PA as a shortcut to get to Veteran's Memorial Park.

33. The neighborhood kids would use an unsecured and incomplete-fenced location at approximately 515 Flower Street to enter the tracks and make their way to the playground, as this path along the tracks was a known shortcut to the park; this is a picture of the location in August, 2019, which is substantially similar to how it looked on April 29, 2023:

Case ID: 250402241



34.     As pictured above, at that time and at the time of the subject incident, the entrance to the tracks was open and accessible to the public and gravel-lined, demarking a walking trail up and onto the train tracks.

35.     Once onto the tracks, neighborhood kids would walk west along the tracks toward the park:



9

36. The neighborhood kids would then walk through a hole in the fence and other non-fenced areas that ran between the railroad tracks and the park to gain entry to the park:



37. Despite this longstanding, known shortcut used by neighborhood kids, all Defendants, in negligent, reckless, and/or wanton disregard for the known dangers presented to unwitting children, like Jahaad Atkinson and Ah'yir Womack, chose to take no action and/or failed to prevent, eliminate or otherwise stop children from using the train tracks and/or the incomplete fencing as a shortcut to the park.

38. On April 29, 2023, Jahaad, Ah'yir, and other children accessed the tracks at 515 Flower Street and began to walk west along the tracks toward the park.

39. At some point while the boys walked along the tracks, someone from the neighborhood saw one of the children holding a BB gun, mistook it for a real gun, and called the Amtrak Police.

Case ID: 250402241

40. The call placed by the unknown individual was patched through to Amtrak's Network Control Center ("NCC"), who then alerted Defendant Cristian Medina, an Amtrak Police Officer, of a person on the tracks firing a gun.

41. Defendant Medina, in his investigation report, states that he received the call at approximately 4:09 PM.

42. Defendant Medina then assigned Defendants Keyah King and Defendant Kyle Hansen, Amtrak Officers, to investigate the area.

43. Defendant Medina also alerted Amtrak's Central Electric and Traffic Control (CETC) and Chester PD.

44. Negligently, recklessly and/or wantonly, Defendant Medina, Amtrak's NCC, and/or Amtrak's CETC did not inform anyone, including but not limited to Defendant Chris Edgerton, Amtrak Engineer, and/or Defendant Dennis Winn, Amtrak student trainee engineer, operating Amtrak train 161 along the NE Corridor, of the fact that there was someone on the tracks on their route.

45. Alternatively, Defendant Edgerton and/or Defendant Dennis Winn, in the face of an alert of an armed person on their route and on the tracks on which they were traveling, negligently, recklessly and/or wantonly ignored the alert, and did not reduce speed, brake, emergency stop, or otherwise change the operation of the train in any way.

46. At 4:20 PM, Defendant Medina contacted Defendant Sean Hughes, an Amtrak Engineer driving a train in the general area, about the report of an armed person on the tracks.

47. Defendant Hughes reported back to Defendant Medina that he did not see anyone at his milepost.

11

48.   Defendant Medina then notified Amtrak NCC and Defendants King and Hansen of the same but instructed that Defendants King and Hansen follow through on their investigation of the report.

49.   As Defendants Edgerton and Winn approached the general area of mile-marker 15, they saw a group of children on the train tracks and that one of them was carrying a BB gun.

50.   Instead of slowing the train, braking, or employing the train's emergency stop, Defendants Edgerton and Winn chose to blow their train horn to scare the children off the tracks.

51.   For some time before impact, Minor-Decedent Jahaad Atkinson's foot became stuck on the tracks, walkway, or surrounding area due to a negligently maintained track, walkway, and surrounding area, and Minor-Decedent Ah'Yir Womack attempted to help release Jahaad's trapped foot before the oncoming train could hit them.

52.   Unfortunately, at or about 4:31 PM on April 29, 2023, Amtrak train 161 struck, dismembered, and killed 9-year-old Jahaad Atkinson and 12-year-old Ah'yir Womack.

53.   After striking the children, Amtrak's conductors finally released the train throttle and applied the train's braking system.

54.   By the time the children were dead, Defendants King and Hansen, despite having over twenty minutes to investigate the report of an armed person on the tracks, still had not arrived on scene.

55.   At 4:35 PM, City of Chester Police Department Officer Joshua Disylvestro responded to the scene and was the first to arrive, where he saw and heard a male and female screaming and pointing to the tracks stating that a boy had been killed. A copy of the City of Chester Police Department Incident Report is attached as **Exhibit B**.

12

56.     In the aftermath of the accident, investigating officers found pieces of Jahaad Atkinson and Ah'yir Womack's bodies scattered across a half mile stretch of the NE Corridor.

57.     Post-accident interviews of Defendants Edgerton and Winn revealed that:

- Defendant Edgerton and Winn had, on other occasions, been advised by Amtrak in the past that children and other people were seen walking along the same section of tracks; and

- Defendant Edgerton and Winn made no mention of receiving a call from any persons regarding the fact that an "armed person" – or any other person or children – was reported on the tracks on their route.

58.     In a post-accident interview with Defendant Sean Gilliam, an Amtrak engineer operating Amtrak Train 20 at 4:05 PM on the same section of tracks, he stated that he had seen a group of children on the tracks around milepost 15 and that one was holding a BB gun.

59.     Defendant Gilliam also stated that he had seen the boy with the BB gun on the tracks in the same area the week before.

60.     Defendant Gilliam did not report this to Amtrak NCC, Amtrak CETC, or any other train engineer operating a train in that area on that day and Amtrak failed to obtain this knowledge from Defendant Gilliam.

61.     Post-accident statements also revealed that Defendant Medina, in the aftermath of the accident, requested that Amtrak CETC slow train operations in the accident area for the foreseeable future. Amtrak denied that request.

62.     A copy of Amtrak's Police Department Incident/Investigation Report Case Number 23005003 is attached hereto as **Exhibit A**.

13

63.     A month after the subject incident, in May, 2023, the unsecured and incomplete fencing looked substantially similar as it did in 2019:



64.     After May, 2023, at some point, the fencing was changed and as of September, 2024 looked like this, which is how it still looks today:



65. As a result of the joint and several actions and/or inactions of Defendants Amtrak, Medina, King, Hansen, Edgerton, Winn, Gilliam, Hughes, SEPTA, John Doe 1, John Doe 2, and/or John Doe 3, a concert of negligent, reckless, and/or wanton conduct resulted in the avoidable death of two children.

66. Plaintiff, Siani Gordan, as Personal Representative and Administratrix of the Estate of Jahaad Atkinson, makes claims for all damages recognized by Pennsylvania's Wrongful Death Act and Survival Act, and any and all other damages available to her and the Estate of Jahaad Atkinson under the laws of Pennsylvania.

67. Plaintiff, Wydeia Kimble, as Personal Representative and Administratrix of the Estate of Ah'yir Womack, makes claims for all damages recognized by Pennsylvania's Wrongful Death Act and Survival Act, and any and all other damages available to her and the Estate of Ah'yir Womack under the laws of Pennsylvania.

68. Plaintiffs bring all Counts below against the Defendants, who each owed a duty to the Minor-Decedents and breached those duties – and those actions were a factual cause of the Minor-Decedents' deaths.

69. In short and as outlined below, this matter is a result of the Defendants' systemic failures to secure and prevent access to their tracks; maintain their tracks, walkway, and surrounding areas in a safe condition; monitor the tracks for unsafe activity and respond and communicate accordingly; and operate their trains in a safe manner.

## COUNT I – NEGLIGENCE AND RECKLESS CONDUCT

### Plaintiffs v. Defendant Amtrak

70. Plaintiffs, by reference, incorporate all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

Case ID: 250402241

71.     As the owners, operators, managers, and/or supervisors of the train tracks, the train track fencing, and the train track partitions, Defendant Amtrak owed a duty under Pennsylvania law to provide a safe environment for known and foreseeable children and adults using the track as a permissible crossing, like Plaintiffs-decedents.

72.     Alternatively, Defendant Amtrak owed a duty of care both under Pennsylvania law and 42 § 8339.1, *et seq.*, to not act with wanton conduct toward known trespassers, like children, that were known to use the train tracks as a shortcut.

73.     Further, the location of the missing fencing and the tracks – Amtrak's property – were attractive nuisances and dangerous conditions.

74.     At all times relevant hereto, Defendant Amtrak was responsible for the actions of its employees, staff, contractors and servants in ensuring that invitees, trespassers, and/or persons with permissive use of the tracks, like Plaintiffs' decedents, were provided with the aforementioned care in their use of the train tracks.

75.     At all times relevant hereto, Defendant Amtrak maintained a nondelegable duty to maintain, monitor, or otherwise provide its train tracks and property in a safe, reasonable condition to persons like Plaintiffs' decedents.

76.     Defendant Amtrak was responsible for the hiring, training, supervision and oversight of their agents, servants, contractors, workers and/or employees who were responsible for ensuring safety on its train tracks and property.

77.     Defendant Amtrak knew or should have known that people used the missing fence at the subject location as an entrance to the tracks and used missing fence at the subject park to access the park.

16

78. Defendant Amtrak knew or should have known that its tracks, walkway, and surrounding areas were improperly maintained and could cause pedestrians or workers to become stuck.

79. Defendant Amtrak knew or should have known that the subject children were on the tracks before the Minor Decedents were killed and failed to act appropriately to prevent their harm and death.

80. Defendant Amtrak desired to bring about the result that followed (the Minor-Decedents' deaths) from its acts and omissions or at least was aware that it was substantially certain to occur.

81. Defendant Amtrak had a subjective appreciation of the risk of harm to which the Minor-Decedents were exposed and acted or failed to act in conscious disregard of that risk; knew or had reason to know of facts that created a high degree of risk of physical harm another and deliberately proceeded to act or fail to act in conscious disregard of or indifference to that risk; and had an appreciation that its conduct might substantially increase the risk of serious harm to the Minor-Decedents in a perceptible way.

82. Plaintiffs' aforementioned injuries were caused by the negligence, carelessness, wantonness, willfulness, recklessness and gross negligence of Defendant Amtrak individually and/or through their agents, servants, workers and/or employees, which included the following:

    a) Acting negligently and with willful and wanton disregard to known and foreseeable trespassers like Plaintiffs' decedents;
    b) Creating a dangerous permissive crossing for persons like Plaintiffs' decedents, which lacked safety, security and other protective measures to ensure safe and non-injurious use;
    c) Creating an attractive nuisance to children, like Plaintiffs' Decedents, that subjected children to known and foreseeable dangers like train collisions;
    d) Failing to prevent, mitigate, or otherwise restrict access to its dangerous train tracks and property, despite undertaking and/or having a duty to do so;

Case ID: 250402241

e) Failing to put in place operational safety procedures to prevent injury to known and foreseeable persons walking on the train tracks and its property;

f) Failing to abide by and conform to its own operational safety procedures put in place to prevent injury to known and foreseeable persons walking on the train tracks and its property;

g) Failing to train, educate, supervise, or otherwise manage its employees, servants, persons, and agents that it tasked with carrying out and performing daily operational safety procedures;

h) Failing to monitor, surveil, or otherwise police its property and train tracks to prevent the use of its train tracks and property by known and foreseeable persons;

i) Failing to train, educate, supervise, or otherwise manage its employees, servants, persons, and agents that it tasked with policing, monitoring, or otherwise surveilling its train track and property to prevent trespass;

j) Failing to install, erect, or otherwise maintain fencing and partitions to prevent known and foreseeable persons from gaining access to its dangerous train tracks and property, despite undertaking and/or having a duty do so;

k) Failing to install, erecting, and/or maintaining fencing and partitions that were effective in preventing, mitigating, or otherwise eliminating known and foreseeable person from entering its train track and property;

l) Failing to install, use, or otherwise adopt systems to monitor, identify, surveil, report, communicate, and respond to known and foreseeable persons crossing and/or trespassing on its train tracks and property;

m) Failing to maintain the subject tracks, walkway, and surrounding area safely to prevent pedestrians and workers from getting stuck on the tracks;

n) Failing to operate the subject train in safe manner to avoid killing the two Minor-Decedents; and

o) Such other negligence and recklessness to be determined during the course of discovery.

83.     As a result of the aforementioned failures and/or inactions of Defendant Amtrak, Plaintiffs' decedents were caused to suffer pain, suffering, terror, emotional fright, fear of impending death, dismemberment, death, loss of enjoyment of life's pleasures, burial and funeral expenses, loss of future earning capacity, and all other damages and losses available under Pennsylvania Wrongful Death and Survival Act.

84.     Defendant Amtrak is responsible by law for the negligence, recklessness and wantonness of its own actions as well as for the actions and failures of its agents, ostensible agents, servants, and/or employees and therefore for the injuries, damages, and losses suffered by the Plaintiffs.

18

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant Amtrak in an amount in excess of fifty thousand dollars ($50,000), including delay damages, pursuant to Pa. R.C.P. 238, interest, punitive damages, and allowable costs of suit and brings this action to recover the same.

## COUNT II – NEGLIGENCE

### Plaintiffs v. Defendants Medina, King, Hansen, Edgerton, Winn, Gilliam, and Hughes

85. Plaintiffs, by reference, incorporate all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

86. At all times material hereto, Defendants were Amtrak Police Officers and/or Amtrak Engineers, responsible for the safe operation of Defendant Amtrak's railroads, trains and other property.

87. Defendants, as employees of a corporation recognized by US law as a government entity, owed a nondelegable duty to carry out their employment responsibilities and duties without wantonness and malice toward the rights of others, like Plaintiffs' decedents.

88. Defendants knew or should have known that people used the missing fence at the subject location as an entrance to the tracks and used missing fence at the subject park to access the park.

89. Defendants knew or should have known that its tracks, walkway, and surrounding areas were improperly maintained and could cause pedestrians or workers to become stuck.

90. Defendants knew or should have known that the subject children were on the tracks before the Minor Decedents were killed and acted appropriately to prevent their harm and death.

91. Defendants desired to bring about the result that followed (the Minor-Decedents' deaths) from its acts and omissions or at least was aware that it was substantially certain to ensure.

19

92.     Defendants had a subjective appreciation of the risk of harm to which the Minor-Decedents were exposed and acted or failed to act in conscious disregard of that risk; knew or had reason to know of facts that created a high degree of risk of physical harm another and deliberately proceeded to act or fail to act in conscious disregard of or indifference to that risk; and had an appreciation that their conduct might substantially increase the risk of serious harm to the Minor-Decedents in a perceptible way.

93.     Defendants had a subjective appreciation of the risk of harm to which the Minor-Decedents were exposed and acted or failed to act in conscious disregard of that risk.

94.     Plaintiffs' aforementioned injuries were caused by the negligence, wantonness, willfulness, and/or recklessness of Defendants individually and/or severally, which included the following:

a) Acting negligently and/or with wanton disregard to known and foreseeable trespassers like Plaintiffs' decedents;

b) Allowing and creating a known dangerous permissive crossing for persons like Plaintiffs' decedents, which lacked safety, security and other protective measures to ensure safe and non-injurious use;

c) Allowing and creating an attractive nuisance to children, like Plaintiffs' Decedents, on Amtrak's property that subjected children to known and foreseeable dangers like train collisions;

d) Failing to prevent, mitigate, or otherwise restrict access to Amtrak's dangerous train tracks and property, despite undertaking and/or having a duty to do so;

e) Failing to put in place operational safety procedures to prevent injury to known and foreseeable persons walking on the train tracks and its property;

f) Failing to abide by and conform to its own operational safety procedures put in place to prevent injury to known and foreseeable persons walking on the train tracks and its property;

g) Failing to train, educate, supervise, or otherwise manage their subordinates that it tasked with carrying-out and performing daily operational safety procedures;

h) Failing to monitor, surveil, or otherwise police its property and train tracks to prevent the use of its train tracks and property by known and foreseeable persons;

i) Failing to respond to a known, active danger on the tracks in wanton disregard for human life;

j) Failing to stop or otherwise cease train operations on the NE Corridor in light of the knowledge that someone was actively on the tracks;

20

k) Failing to communicate, advise, alert, or otherwise notify Amtrak engineers traveling along the NE Corridor that persons were walking on the tracks in which their trains were traveling and approaching;

l) Failing to maintain the subject tracks, walkway, and surrounding area safely to prevent pedestrians and workers from getting stuck on the tracks;

m) Failing to operate the subject train in safe manner to avoid killing the two Minor-Decedents; and

n) Such other negligence and recklessness to be determined during the course of discovery.

95. As a result of the aforementioned negligent, wanton, willful and reckless failures and/or inactions of Defendants, Plaintiffs' decedents were caused to suffer pain, suffering, terror, emotional fright, fear of impending death, dismemberment, death, loss of enjoyment of life's pleasures, burial and funeral expenses, loss of future earning capacity, and all other damages and losses available under Pennsylvania Wrongful Death and Survival Act.

96. Defendants, by law, are responsible for the recklessness, willfulness and wantonness of their actions and therefore for the injuries, damages, and losses suffered by the Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants Medina, King, Hansen, Edgerton, Winn, Gilliam and Hughes, in an amount in excess of fifty thousand dollars ($50,000), including delay damages, pursuant to Pa. R.C.P. 238, interest, punitive damages, and allowable costs of suit and brings this action to recover the same.

## COUNT III – NEGLIGENCE

### Plaintiffs v. Defendant SEPTA

97. Plaintiffs, by reference, incorporate all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

98. As the owner, operator, lessee, manager, accessor, user, and/or supervisor of the train tracks, the train track fencing, and the train track partitions, Defendant SEPTA owed a duty

under Pennsylvania to provide a safe environment for known and foreseeable children and adults using the track as a permissible crossing, like Plaintiffs-decedents.

99. Alternatively, Defendant SEPTA owed a duty of care both under Pennsylvania law and 42 § 8339.1, *et seq.*, to not act with wanton conduct toward known trespassers, like children, that were known to use the train tracks as a shortcut.

100. Further, the location of the missing fencing and the tracks – SEPTA's property – were attractive nuisances and dangerous conditions.

101. At all times relevant hereto, Defendant SEPTA was responsible for the actions of its employees, staff, contractors and servants in ensuring that invitees, trespassers, and/or persons with permissive use of the tracks, like Plaintiffs' decedents, were provided with the aforementioned care in their use of the train tracks.

102. At all times relevant hereto, Defendant SEPTA maintained a nondelegable duty to maintain, monitor, or otherwise provide its train tracks and property in a safe, reasonable condition to persons like Plaintiffs' decedents.

103. Defendant SEPTA was responsible for the hiring, training, supervision and oversight of their agents, servants, contractors, workers and/or employees who were responsible for ensuring safety on its train tracks and property.

104. Defendant SEPTA knew or should have known that people used the missing fence at the subject location as an entrance to the tracks and used missing fence at the subject park to access the park.

105. Defendant SEPTA knew or should have known that its tracks, walkway, and surrounding areas were improperly maintained and could cause pedestrians or workers to become stuck.

106. Defendant SEPTA knew or should have known that the subject children were on the tracks before the Minor Decedents were killed and acted appropriately to prevent their harm and death.

107. Defendant SEPTA desired to bring about the result that followed (the Minor-Decedents' deaths) from its acts and omissions or at least was aware that it was substantially certain to ensure.

108. Defendant SEPTA had a subjective appreciation of the risk of harm to which the Minor-Decedents were exposed and acted or failed to act in conscious disregard of that risk; knew or had reason to know of facts that created a high degree of risk of physical harm another and deliberately proceeded to act or fail to act in conscious disregard of or indifference to that risk; and had an appreciation that its conduct might substantially increase the risk of serious harm to the Minor-Decedents in a perceptible way.

109. Defendant SEPTA had a subjective appreciation of the risk of harm to which the Minor-Decedents were exposed and acted or failed to act in conscious disregard of that risk.

110. Plaintiffs' aforementioned injuries were caused by the negligence, carelessness, wantonness, willfulness, recklessness and gross negligence of Defendant SEPTA individually and/or through their agents, servants, workers and/or employees, which included the following:

a) Acting with wanton disregard to known and foreseeable trespassers like Plaintiffs' decedents;
b) Creating a dangerous permissive crossing for persons like Plaintiffs' decedents, which lacked safety, security and other protective measures to ensure safe and non-injurious use;
c) Creating an attractive nuisance to children, like Plaintiffs' Decedents, that subjected children to known and foreseeable dangers like train collisions;
d) Failing to prevent, mitigate, or otherwise restrict access to its dangerous train tracks and property despite undertaking and/or having a duty to do so;
e) Failing to put in place operational safety procedures to prevent injury to known and foreseeable persons walking on the train tracks and its property;

23

f) Failing to abide by and conform to its own operational safety procedures put in place to prevent injury to known and foreseeable persons walking on the train tracks and its property;

g) Failing to train, educate, supervise, or otherwise manage its employees, servants, persons, and agents that it tasked with carrying-out and performing daily operational safety procedures;

h) Failing to monitor, surveil, or otherwise police its property and train tracks to prevent the use of its train tracks and property by known and foreseeable persons;

i) Failing to train, educate, supervise, or otherwise manage its employees, servants, persons, and agents that it tasked with policing, monitoring, or otherwise surveilling its train track and property to prevent trespass;

j) Failing to install, erect, or otherwise maintain fencing and partitions to prevent known and foreseeable persons from gaining access to its dangerous train tracks and property;

k) Installing, erecting, and/or maintaining fencing and partitions that were ineffective in preventing, mitigating, or otherwise eliminating known and foreseeable person from entering its train track and property;

l) Failing to install, use, or otherwise adopt systems to monitor, identify, surveil, communicate, and report known and foreseeable persons crossing and/or trespassing on its train tracks and property;

m) Failing to maintain the subject tracks, walkway, and surrounding area safely to prevent pedestrians and workers from getting stuck on the tracks; and

n) Such other negligence and recklessness to be determined during the course of discovery.

111. As a result of the aforementioned failures and/or inactions of Defendant SEPTA, Plaintiffs' decedents were caused to suffer pain, suffering, terror, emotional fright, fear of impending death, dismemberment, death, loss of enjoyment of life's pleasures, burial and funeral expenses, loss of future earning capacity, and all other damages and losses available under Pennsylvania Wrongful Death and Survival Act.

112. Defendant SEPTA is responsible by law for the negligence, recklessness and wantonness of its own actions as well as for the actions and failures of its agents, ostensible agents, servants, and/or employees and therefore for the injuries, damages, and losses suffered by the Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant SEPTA in an amount in excess of fifty thousand dollars ($50,000), including delay damages, pursuant to

24

Pa. R.C.P. 238, interest, punitive damages, and allowable costs of suit and brings this action to recover the same.

## COUNT IV – NEGLIGENCE

### Plaintiffs v. Defendant John Doe 1

113.    Plaintiffs, by reference, incorporate all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

114.    As the individual, corporation, or other business entity responsible for the building, erecting, planning and/or maintaining Defendant Amtrak and/or Defendant SEPTA's railroad fencing and partitions, John Doe 1 owed a duty under Pennsylvania law to provide, ensure, maintain, or otherwise build fencing and partitions to keep the train tracks and property in a safe, reasonable condition to foreseeable persons like Plaintiffs' decedents.

115.    Likewise, John Doe 1 owed a duty under Pennsylvania law to provide, ensure, maintain, or otherwise build fencing and partitions to prevent foreseeable persons, like Plaintiffs' decedents, from entering and trespassing on Defendant Amtrak and/or SEPTA's railroads and property.

116.    As the individual, corporation, or other business entity responsible for the building, erecting, planning and/or maintaining Defendant Amtrak and/or Defendant SEPTA's railroad fencing and partitions, Defendant John Doe 1 knew of the dangers of trains to persons walking along the train tracks and the necessity of its work to prevent dangerous conditions and accidents.

117.    Defendant John Doe 1 was responsible for the hiring, training, supervision and oversight of its agents, servants, contractors, subcontractors, workers and/or employees who were responsible for the work it performed with respect to the fences and partitions.

25

118. Plaintiffs' aforementioned injuries were caused by the negligence, carelessness, wantonness, willfulness, recklessness and gross negligence of Defendant John Doe 1 individually and/or through their agents, servants, workers and/or employees, which included the following:

a) Acting with negligent, reckless, and/or wanton disregard to known and foreseeable trespassers like Plaintiffs' decedents;

b) Creating a dangerous permissive crossing for persons like Plaintiffs' decedents, which lacked safety, security and other protective measures to ensure safe and non-injurious use;

c) Creating an attractive nuisance to children, like Plaintiffs' Decedents, that subjected children to known and foreseeable dangers like train collisions;

d) Failing to prevent, mitigate, or otherwise restrict access to its dangerous train tracks and property despite undertaking and/or having a duty to do so;

e) Failing to erect, build, maintain, plan, or otherwise install fencing and partitions that effectively prevented persons from entering Defendant Amtrak and/or Defendant SEPTA's train tracks and property.

f) Failing to suggest other means of fencing or partitions that would have created a more substantial deterrence to foreseeable persons intending to walk on Defendant Amtrak and/or Defendant SEPTA's train tracks and property.

g) Suggesting, purchasing, or otherwise providing fencing and/or partitions that failed to prevent and deter foreseeable persons from entering and walking on Defendant Amtrak and/or Defendant SEPTA's train tracks and property.

h) Failing to train, educate, supervise, or otherwise manage its employees, contractors, subcontractors, servants, persons, and/or agents that it tasked with erecting, building, maintaining, planning, or otherwise installing fencing and partitions along Defendant Amtrak and/or SEPTA's railroads and property;

i) Failing to inspect, monitor, maintain, or otherwise ensure that its fencing and partitions were performed in a workmanlike manner;

j) Failing to maintain the subject tracks, walkway, and surrounding area safely to prevent pedestrians and workers from getting stuck on the tracks; and

k) Such other negligence and recklessness to be determined during the course of discovery.

119. As a result of the aforementioned failures and/or inactions of Defendant John Doe 1, Plaintiffs' decedents were caused to suffer pain, suffering, terror, emotional fright, fear of impending death, dismemberment, death, loss of enjoyment of life's pleasures, burial and funeral expenses, loss of future earning capacity, and all other damages and losses available under Pennsylvania Wrongful Death and Survival Act.

Case ID: 250402241

120.   Defendant John Doe 1 is responsible by law for the negligence, gross negligence, recklessness and/or wantonness of its own actions as well as for the actions and failures of its agents, ostensible agents, servants, contractors, subcontractors and/or employees and therefore for the injuries, damages, and losses suffered by the Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant John Doe 1 in an amount in excess of fifty thousand dollars ($50,000), including delay damages, pursuant to Pa. R.C.P. 238, interest, punitive damages, and allowable costs of suit and brings this action to recover the same.

## COUNT V – NEGLIGENCE

### Plaintiffs v. Defendant John Doe 2

121.   Plaintiffs, by reference, incorporate all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

122.   As the individual, corporation, or other business entity responsible for the consulting on the building, erecting, designing, and installing of fencing and other partitions on Defendant Amtrak and/or Defendant SEPTA's railroads and property, John Doe 2 owed a duty under Pennsylvania law to plan, suggest, design, or otherwise contract for the building of fencing and partitions to keep the train tracks and property in a safe, reasonable condition to foreseeable persons like Plaintiffs' decedents.

123.   Likewise, John Doe 2 owed a duty under Pennsylvania law to provide, ensure, maintain, or otherwise plan, suggest, design, or otherwise contract for the building of fencing and partitions to prevent foreseeable persons, like Plaintiffs' decedents, from entering and trespassing on Defendant Amtrak and/or SEPTA's railroads and property.

124.   As the individual, corporation, or other business entity responsible for the plan, suggest, design, or otherwise contract for the building of fencing and partitions on Defendant

Case ID: 250402241

Amtrak and/or Defendant SEPTA's railroads and property, Defendant John Doe 2 knew of the dangers of trains to persons walking along the train tracks and the necessity of its work to prevent dangerous conditions and accidents.

125. Defendant John Doe 2 was responsible for the hiring, training, supervision and oversight of its agents, servants, contractors, subcontractors, workers and/or employees who were responsible for the work it performed with respect to the fences and partitions.

126. Plaintiffs' aforementioned injuries were caused by the negligence, carelessness, wantonness, willfulness, recklessness and gross negligence of Defendant John Doe 2 individually and/or through their agents, servants, workers and/or employees, which included the following:

a) Acting with negligent, reckless, and/or wanton disregard to known and foreseeable trespassers like Plaintiffs' decedents;

b) Creating a dangerous permissive crossing for persons like Plaintiffs' decedents, which lacked safety, security and other protective measures to ensure safe and non-injurious use;

c) Creating an attractive nuisance to children, like Plaintiffs' Decedents, that subjected children to known and foreseeable dangers like train collisions;

d) Failing to prevent, mitigate, or otherwise restrict access to its dangerous train tracks and property despite undertaking and/or having a duty to do so;

e) Failing to erect, build, maintain, plan, or otherwise install fencing and partitions that effectively prevented persons from entering Defendant Amtrak and/or Defendant SEPTA's train tracks and property.

f) Failing to suggest other means of fencing or partitions that would have created a more substantial deterrence to foreseeable persons intending to walk on Defendant Amtrak and/or Defendant SEPTA's train tracks and property.

g) Suggesting, purchasing, or otherwise providing fencing and/or partitions that failed to prevent and deter foreseeable persons from entering and walking on Defendant Amtrak and/or Defendant SEPTA's train tracks and property.

h) Hiring, selecting and/or otherwise retaining an incompetent contractor and/or subcontractor to erect, build, maintain, plan, or otherwise install fencing and partitions that effectively prevented persons from entering Defendant Amtrak and/or Defendant SEPTA's train tracks and property.

i) Failing to train, educate, supervise, or otherwise manage its employees, contractors, subcontractors, servants, persons, and/or agents that it tasked with erecting, building, maintaining, planning, or otherwise installing fencing and partitions along Defendant Amtrak and/or SEPTA's railroads and property;

j) Failing to inspect, monitor, maintain, or otherwise ensure that its fencing and partitions were performed in a workmanlike manner;

28

k) Failing to maintain the subject tracks, walkway, and surrounding area safely to prevent pedestrians and workers from getting stuck on the tracks; and

l) Such other negligence and recklessness to be determined during the course of discovery.

127.   As a result of the aforementioned failures and/or inactions of Defendant John Doe 2, Plaintiffs' decedents were caused to suffer pain, suffering, terror, emotional fright, fear of impending death, dismemberment, death, loss of enjoyment of life's pleasures, burial and funeral expenses, loss of future earning capacity, and all other damages and losses available under Pennsylvania Wrongful Death and Survival Act.

128.   Defendant John Doe 2 is responsible by law for the negligence, gross negligence, recklessness and/or wantonness of its own actions as well as for the actions and failures of its agents, ostensible agents, servants, contractors, subcontractors and/or employees and therefore for the injuries, damages, and losses suffered by the Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant John Doe 2 in an amount in excess of fifty thousand dollars ($50,000), including delay damages, pursuant to Pa. R.C.P. 238, interest, punitive damages, and allowable costs of suit and brings this action to recover the same.

## COUNT VI – NEGLIGENCE

### Plaintiffs v. Defendant John Doe 3

129.   Plaintiffs, by reference, incorporate all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

130.   As the individual, corporation, or other business entity responsible for maintaining, repairing, or otherwise ensuring the efficacy and safety of fencing and other partitions on Defendant Amtrak and/or Defendant SEPTA's railroads and property, John Doe 3 owed a duty

29

under Pennsylvania law to maintain, repair, and ensue that the fencing and partitions kept the train tracks and property in a safe, reasonable condition to foreseeable persons like Plaintiffs' decedents.

131. Likewise, John Doe 3 owed a duty under Pennsylvania law to maintain, repair, and ensure that the fencing and partitions prevented foreseeable persons, like Plaintiffs' decedents, from entering and trespassing on Defendant Amtrak and/or SEPTA's railroads and property.

132. As the individual, corporation, or other business entity responsible for the maintenance, repair, and workmanship of the fencing and partitions on Defendant Amtrak and/or Defendant SEPTA's railroads and property, Defendant John Doe 3 knew of the dangers of trains to persons walking along the train tracks and the necessity of its work to prevent dangerous conditions and accidents.

133. Defendant John Doe 3 was responsible for the hiring, training, supervision and oversight of its agents, servants, contractors, subcontractors, workers and/or employees who were responsible for the work it performed with respect to the fences and partitions.

134. Plaintiffs' aforementioned injuries were caused by the negligence, carelessness, wantonness, willfulness, recklessness and gross negligence of Defendant John Doe 3 individually and/or through their agents, servants, workers and/or employees, which included the following:

   a) Acting with negligent, reckless, and/or wanton disregard to known and foreseeable trespassers like Plaintiffs' decedents;
   b) Creating a dangerous permissive crossing for persons like Plaintiffs' decedents, which lacked safety, security and other protective measures to ensure safe and non-injurious use;
   c) Creating an attractive nuisance to children, like Plaintiffs' Decedents, that subjected children to known and foreseeable dangers like train collisions;
   d) Failing to prevent, mitigate, or otherwise restrict access to its dangerous train tracks and property despite undertaking and/or having a duty to do so;
   e) Failing to maintain, repair, or otherwise ensure the workmanship of fencing and partitions to effectively prevent persons from entering Defendant Amtrak and/or Defendant SEPTA's train tracks and property.

30

f) Failing to suggest other means of fencing or partitions that would have created a more substantial deterrence to foreseeable persons intending to walk on Defendant Amtrak and/or Defendant SEPTA's train tracks and property.

g) Suggesting, purchasing, or otherwise providing fencing and/or partitions that failed to prevent and deter foreseeable persons from entering and walking on Defendant Amtrak and/or Defendant SEPTA's train tracks and property.

h) Failing to train, educate, supervise, or otherwise manage its employees, contractors, subcontractors, servants, persons, and/or agents that it tasked with maintaining, repairing, or otherwise ensuring the workmanship of fencing and partitions along Defendant Amtrak and/or SEPTA's railroads and property;

i) Failing to inspect, monitor, maintain, or otherwise ensure that its fencing and partitions were performed in a workmanlike manner;

j) Failing to maintain the subject tracks, walkway, and surrounding area safely to prevent pedestrians and workers from getting stuck on the tracks; and

k) Such other negligence and recklessness to be determined during the course of discovery.

135.    As a result of the aforementioned failures and/or inactions of Defendant John Doe 3, Plaintiffs' decedents were caused to suffer pain, suffering, terror, emotional fright, fear of impending death, dismemberment, death, loss of enjoyment of life's pleasures, burial and funeral expenses, loss of future earning capacity, and all other damages and losses available under Pennsylvania Wrongful Death and Survival Act.

136.    Defendant John Doe 3 is responsible by law for the negligence, gross negligence, recklessness and/or wantonness of its own actions as well as for the actions and failures of its agents, ostensible agents, servants, contractors, subcontractors and/or employees and therefore for the injuries, damages, and losses suffered by the Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant John Doe 3 in an amount in excess of fifty thousand dollars ($50,000), including delay damages, pursuant to Pa. R.C.P. 238, interest, punitive damages, and allowable costs of suit and brings this action to recover the same.

Case ID: 250402241

## COUNT VII – WRONGFUL DEATH

### Plaintiff, Siani Gordon v. All Defendants

137.    Plaintiffs, by reference, incorporate all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

138.    Plaintiff, Siani Gordon, as Personal Representative of the Estate of Jahaad Atkinson, brings this action on behalf of all persons entitled by law to recover damages for the death of Jahaad Atkinson, pursuant to Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. § 8301.

139.    Decedent is survived by his mother Siani Gordon.

140.    Plaintiff claims damages for the pecuniary losses suffered by the decedent's survivors by reasons of his death as well as reimbursement for hospital, nursing, medical, funeral expenses and the expenses of the administration of his Estate and all of the other proper losses under law.

141.    No recovery for the same damages was had during the lifetime of decedent.

142.    The Defendants' carelessness, negligence, gross negligence, wanton, willful and reckless disregard for Jahaad's life and safety were a substantial factor in causing and increased the risk of harm that his injuries and death would occur.

143.    Plaintiff seeks punitive damages on all of her counts against each and every Defendant in this matter, for the Defendants' outrageous conduct, evil motive or reckless indifference to the rights of others, as set forth herein. Further, the Defendants' actions as set forth herein were so outrageous as to demonstrate willful, wanton or reckless conduct.

**WHEREFORE**, Plaintiff demands judgment in their favor and against all Defendants in an amount in excess of fifty thousand dollars ($50,000), including delay damages, pursuant to Pa.

Case ID: 250402241

R.C.P. 238, interest, punitive dmages, and allowable costs of suit and brings this action to recover the same.

## COUNT VIII – SURVIVAL ACTION

### Plaintiff, Estate of Jahaad Atkinson v. All Defendants

144.    Plaintiffs, by reference, incorporate all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

145.    Plaintiff brings this action on behalf of the Estate of Jahaad Atkinson, deceased, pursuant to the Pennsylvania Survival Act, 42 Pa. C.S.A. § 8302, and claims on behalf of the Estate of Jahaad Atkinson, all damages recoverable by law, including but not limited to pain and suffering which the decedent suffered before his death, pre-impact fear of bodily harm and death, loss of earnings and earning capacity suffered by the decedent from the date of his death until such time in the future as he probably would have lived and the total limitation and deprivation of the Plaintiff's decedent's normal activities, pursuits and pleasures from the date of his death until such time in the future as he probably would have lived but for the conduct of Defendants.

146.    The Defendants' carelessness, negligence, gross negligence, misconduct and reckless disregard for Jahaad's life and safety were a substantial factor in causing and increased the risk of harm that her injuries and death would occur.

147.    Plaintiff seeks punitive damages on all of her counts against each and every Defendant in this matter, for the Defendants' outrageous conduct, evil motive or reckless indifference to the rights of others, as set forth herein. Further, the Defendants' actions as set forth herein were so outrageous as to demonstrate willful, wanton or reckless conduct.

**WHEREFORE**, Plaintiff demands judgment in their favor and against all Defendants in an amount in excess of fifty thousand dollars ($50,000), including delay damages, pursuant to Pa.

R.C.P. 238, interest, punitive damages, and allowable costs of suit and brings this action to recover the same.

## COUNT IX – WRONGFUL DEATH

### Plaintiff, Wydeia Kimble v. All Defendants

148. Plaintiffs, by reference, incorporate all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

149. Plaintiff, Wydeia Kimble, as Personal Representative of the Estate of Ah'yir Womack, brings this action on behalf of all persons entitled by law to recover damages for the death of Ah'yir Womack, pursuant to Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. § 8301.

150. Decedent is survived by his mother Wydeia Kimble.

151. Plaintiff claims damages for the pecuniary losses suffered by the decedent's survivors by reasons of his death as well as reimbursement for hospital, nursing, medical, funeral expenses and the expenses of the administration of his Estate and all of the other proper losses under law.

152. No recovery for the same damages was had during the lifetime of decedent.

153. The Defendants' carelessness, negligence, gross negligence, wanton, willful and reckless disregard for Ah'yir's life and safety were a substantial factor in causing and increased the risk of harm that his injuries and death would occur.

154. Plaintiff seeks punitive damages on all of her counts against each and every Defendant in this matter, for the Defendants' outrageous conduct, evil motive or reckless indifference to the rights of others, as set forth herein. Further, the Defendants' actions as set forth herein were so outrageous as to demonstrate willful, wanton or reckless conduct.

**WHEREFORE**, Plaintiff demands judgment in their favor and against all Defendants in an amount in excess of fifty thousand dollars ($50,000), including delay damages, pursuant to Pa.

Case ID: 250402241

R.C.P. 238, interest, punitive damages, and allowable costs of suit and brings this action to recover the same.

## COUNT X – SURVIVAL ACTION

### Plaintiff, Estate of Ah'yir Womack v. All Defendants

155.    Plaintiffs, by reference, incorporate all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

156.    Plaintiff brings this action on behalf of the Estate of Ah'yir Womack, deceased, pursuant to the Pennsylvania Survival Act, 42 Pa. C.S.A. § 8302, and claims on behalf of the Estate of Ah'yir, all damages recoverable by law, including but not limited to pain and suffering which the decedent suffered before his death, pre-impact fear of bodily harm and death, loss of earnings and earning capacity suffered by the decedent from the date of his death until such time in the future as he probably would have lived and the total limitation and deprivation of the Plaintiff's decedent's normal activities, pursuits and pleasures from the date of his death until such time in the future as he probably would have lived but for the conduct of Defendants.

157.    The Defendants' carelessness, negligence, gross negligence, misconduct and reckless disregard for Ah'yir's life and safety were a substantial factor in causing and increased the risk of harm that her injuries and death would occur.

158.    Plaintiff seeks punitive damages on all of her counts against each and every Defendant in this matter, for the Defendants' outrageous conduct, evil motive or reckless indifference to the rights of others, as set forth herein. Further, the Defendants' actions as set forth herein were so outrageous as to demonstrate willful, wanton or reckless conduct.

**WHEREFORE**, Plaintiff demands judgment in their favor and against all Defendants in an amount in excess of fifty thousand dollars ($50,000), including delay damages, pursuant to Pa.

Case ID: 250402241

R.C.P. 238, interest, punitive damages, and allowable costs of suit and brings this action to recover the same.

**MCELDREW PURTELL**

*/s/ Jon D. Rubinstein*
Jon D. Rubinstein, Esq.
Gregory R. Kiss, Esq.
*Attorneys for Plaintiffs*

Dated: April 17, 2025

Case ID: 250402241

## **VERIFICATION**

I, Siani Gordon, verify that I am the Plaintiff herein and that the facts set forth in this Complaint are true and correct to the best of my knowledge, information and belief. The undersigned understands that the statement therein is made subject to the penalties of 18 Pa.C.S.A. Section 4904, relating to unsworn falsification to authorities.

By: _____

SIANI GORDON

Dated: 4/16/25

38

## VERIFICATION

I, Wydeia Kimble, verify that I am the Plaintiff herein and that the facts set forth in this Complaint are true and correct to the best of my knowledge, information and belief. The undersigned understands that the statement therein is made subject to the penalties of 18 Pa.C.S.A. Section 4904, relating to unsworn falsification to authorities.

By: _W. Kimble_____

WYDEIA KIMBLE

Dated: 4/16/25

# EXHIBIT A



# Amtrak Police Department

## Incident/Investigation Report

## APPROVED

| Division: MAN | Case Number: 23005003 | Date: 6/16/23 | 12:42PM |
|---|---|---|---|

## Incident Information

| Date/Time Reported | Date/Time Occured | Date/Time Found | Officer |
|---|---|---|---|
| 4/29/23  4:41PM | 4/29/23  4:00PM | 4/29/23  4:20PM | (▓▓▓) KING, KEYAH S |

| Incident Location | | | (▓▓▓) KING, KEYAH S |
|---|---|---|---|
| 15.3 WIL , CHESTER , PA , 19013 | | | (▓▓▓) BATTISTA, WILLIAM |

| Amtrak Train Number | Train Car Number | Day | Other Transit Agency | Other Transit Agency Train # | Occurred On Train |
|---|---|---|---|---|---|
| | | | | (▓▓▓) JOSEPH, CRISTIAN | ☐ Yes ☐ No |
| | | | | (▓▓▓) MARLEY, RYAN MICHAEL | |
| | | | | (▓▓▓) HANSEN, KYLE MARTIN | |
| | | | | (▓▓▓) WEIDNER, ROBERT | |
| | | | | (▓▓▓) WEATHERSPOON, GARY | |
| | | | | (▓▓▓) FISHER, CHARLES | |
| | | | | (▓▓▓) POLASKI, MICHAEL | |

## Charges

| | Charge Type | Description | | | Statute | UCR | ☐ Att |
|---|---|---|---|---|---|---|---|
| | | AMT- ACCIDENT / TRAIN TRESPASSER (FATAL) | | | | | ☐ Com |

| Alcohol, Drugs or Computers Used | Location Type | Premise Entered | Forced Entry | Weapons |
|---|---|---|---|---|
| ☐ Alcohol  ☐ Drugs  ☐ Computers | RAILROAD PROPERTY | | ☐ Yes ☐ No | 1. |
| Entry | Exit | Criminal Activity | | 2. |
| | | | | 3. |
| Bias Motivation | | Bias Target | Bias Circumstances | Hate Group |

## Charges

| | Charge Type | Description | | | Statute | UCR | ☐ Att |
|---|---|---|---|---|---|---|---|
| | | PA-CRIM TRES-DEFIANT TRES/POSTED | | | 3503 B1II | | ☐ Com |

| Alcohol, Drugs or Computers Used | Location Type | Premise Entered | Forced Entry | Weapons |
|---|---|---|---|---|
| ☐ Alcohol  ☐ Drugs  ☐ Computers | HIGHWAY/ROAD/ALLEY | | ☐ Yes ☐ No | 1. |
| Entry | Exit | Criminal Activity | | 2. |
| | | | | 3. |
| Bias Motivation | | Bias Target | Bias Circumstances | Hate Group |

## Victims

| | Type | Injuries | | Residency Status | Ethnicity |
|---|---|---|---|---|---|
| | BUSINESS | | | | |

| Name (Last, First, M) | | Race | Sex | DOB | Age |
|---|---|---|---|---|---|
| AMTRAK | | | | | |

| Address | Home Phone | Cell Phone |
|---|---|---|
| 50 MASSACHUSETTS AVE NE , WASHINGTON , DC , 20002 | | |

| Employer Name/Address | Business Phone | Other Phone |
|---|---|---|
| | (▓▓▓) | |

| Victim of Crimes |
|---|

| | | **Offenders** | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Type | | Name (Last, First, M) | | | | | | |
| | INDIVIDUAL | | WOMAK,AHYIR | | | | | | |
| AKA | | | | Race | Sex | DOB | Age | Height | Weight |
| | | | | BLACK OR A | MALE | 7/9/10 | 12 | | |
| Address | | | | | | Home Phone | | Cell Phone | |
| 1117 DORIAN DR , CHESTER , PA , 19013 | | | | | | | | | |
| Employer Name/Address | | | | | | Business Phone | | Other Phone | |
| Scars, Marks, Tatoos and other distinguishing features | | | | | | | | | |
| Physical Characteristics | | | | | | | | | |

| | | **Offenders** | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Type | | Name (Last, First, M) | | | | | | |
| | INDIVIDUAL | | ATKINSON,JAHAAD | | | | | | |
| AKA | | | | Race | Sex | DOB | Age | Height | Weight |
| | | | | BLACK OR A | MALE | 6/8/13 | 9 | | |
| Address | | | | | | Home Phone | | Cell Phone | |
| 2910 W 16TH STREET , CHESTER , PA , 19013 | | | | | | | | | |
| Employer Name/Address | | | | | | Business Phone | | Other Phone | |
| Scars, Marks, Tatoos and other distinguishing features | | | | | | | | | |
| Physical Characteristics | | | | | | | | | |

| **Assisting Officers** |
| --- |

(████) HANSEN, KYLE MARTIN

## Witnesses

| | Name (Last, First, M) | Race | Sex | DOB | Age |
|---|---|---|---|---|---|
| | BUCKLEY,NAIIN | BLACK OR A | MALE | 9/16/10 | 12 |
| **Address** | 715 WILSON ST , CHESTER , PA , 19013 | **Home Phone** (484) 475-7588 | | **Cell Phone** | |
| **Employer Name/Address** | | **Business Phone** | | **Other Phone** | |

**Witness Type**

**Witness Notes**

## Witnesses

| | Name (Last, First, M) | Race | Sex | DOB | Age |
|---|---|---|---|---|---|
| | HARMON,DAY'ON | BLACK OR A | MALE | 1/10/11 | 12 |
| **Address** | | **Home Phone** | | **Cell Phone** | |
| **Employer Name/Address** | | **Business Phone** | | **Other Phone** | |

**Witness Type**

**Witness Notes**

## Other Persons Involved

| Name Code | Name (Last, First, M) | Race | Sex | DOB | Age |
|---|---|---|---|---|---|
| INVOLVED, OTHER | BUCKLEY,SHAVON | BLACK OR A | FEMALE | 2/2/82 | 41 |

| Address | Home Phone | Cell Phone |
|---|---|---|
| 715 WILSON ST , CHESTER , PA , 19013 | (484) 475-7588 | |

| Employer Name/Address | Business Phone | Other Phone |
|---|---|---|
| | | |

## Other Persons Involved

| Name Code | Name (Last, First, M) | Race | Sex | DOB | Age |
|---|---|---|---|---|---|
| INVOLVED, OTHER | KIMBLE,WYDEA | BLACK OR A | FEMALE | | |

| Address | Home Phone | Cell Phone |
|---|---|---|
| 1117 DORIAN DR , CHESTER , PA , 19013 | | |

| Employer Name/Address | Business Phone | Other Phone |
|---|---|---|
| | | |

## Other Persons Involved

| Name Code | Name (Last, First, M) | Race | Sex | DOB | Age |
|---|---|---|---|---|---|
| INVOLVED, OTHER | WOMACK,TYRONE | BLACK OR A | MALE | | |

| Address | Home Phone | Cell Phone |
|---|---|---|
| | | |

| Employer Name/Address | Business Phone | Other Phone |
|---|---|---|
| | | |

## Other Persons Involved

| Name Code | Name (Last, First, M) | Race | Sex | DOB | Age |
|---|---|---|---|---|---|
| LAW ENFORCEMENT OTH | FOSTER,B. | BLACK OR A | MALE | | |

| Address | Home Phone | Cell Phone |
|---|---|---|
| | | |

| Employer Name/Address | Business Phone | Other Phone |
|---|---|---|
| | | |

## Other Persons Involved

| Name Code | Name (Last, First, M) | Race | Sex | DOB | Age |
|---|---|---|---|---|---|
| LAW ENFORCEMENT OTH | DISILVESTRO,J. | WHITE | MALE | | |

| Address | Home Phone | Cell Phone |
|---|---|---|
| | | |

| Employer Name/Address | Business Phone | Other Phone |
|---|---|---|
| | | |

## Other Persons Involved

| Name Code | Name (Last, First, M) | Race | Sex | DOB | Age |
|---|---|---|---|---|---|
| OTHER | GORDON,CIANI | UNKNOWN | FEMALE | | 20 |

| Address | Home Phone | Cell Phone |
|---|---|---|
| | | |

| Employer Name/Address | Business Phone | Other Phone |
|---|---|---|
| | | |

## Other Persons Involved

**Division:** MAN    **Case Number:** 23005003    **Date:** 6/16/23    12:42PM

| Name Code | Name (Last, First, M) | Race | Sex | DOB | Age |
|---|---|---|---|---|---|
| INVOLVED, OTHER | ATKINSON,SHAMAR | UNKNOWN | MALE | | |
| Address | | Home Phone | | Cell Phone | |
| Employer Name/Address | | Business Phone | | Other Phone | |

## Other Persons Involved

| Name Code | Name (Last, First, M) | Race | Sex | DOB | Age |
|---|---|---|---|---|---|
| INVOLVED, OTHER | BRYAN,DANYEL | | FEMALE | | 20 |
| Address | | Home Phone | | Cell Phone | |
| Employer Name/Address | | Business Phone | | Other Phone | |

## Notes/Narratives

On April 29 ,2023 at hours 1641 hrs Officer King alongside Officer Hanson received a call for service from the NCC. They informed Officers that there were multiple trespassers at mile post 15.5, that were seen with a firearm. As officers were in route to the call for service they received further information from Radio room that there was a pedestrian strike with multiple individuals. Once officers got to the scene we observed a train on track at rest at mile post 15.8. Officers spoke with conductor Weatherspoon and Timothy Morris that were in charge of the train. They informed us they had walked the train and checked the right away and saw sets of body matter on and under the train. Officers immediately put a hold on all tracks to access the full magnitude of the situation. An on foot visual check of track 1,2,3,4 proved that there was body matter (torso, head) on a knuckle of the head end of the train. Officers placed fatality covers on body parts along the train tracks to ensure passing trains would not receive the visuals of the fatality.

There were also limbs found under the 5th car of the resting area(stop) of the train. The point of impact of the train was MP.15.02 at a overhead bridge area. It appeared as there was a larger group and as the train came closer 2 subjects were seen on the tracks near the overhead bridge. The area has metal bars on the side that would hinder dodging the train. The footing area also possessed gaps that could make it difficult for a trespasser to evade a train moving at normal travel speed.

The resting area was Mile post 15.8 and Chester PD assisted with crowd control as family members all congregated next to the area. The coroner (Justin Arnold) once on scene confirmed that there were 2 separate fatalities. The coroner combed the tracks retrieving all body parts and matter on tracks. The Rail Foreman Christopher Edgerton gave back track 1 to a restricted speed as most of the body matter was located in track 3. A Chester PD Captain had arrived on location that was related to one of the individuals involved in the fatality. We are waiting for The ME's office to confirm complete identities of subjects.

Once all limbs and parts were collected off track 3 and 4 the rails were given back to CTECH. CID collected statements from the crew.

Officers on scene
Edward Riley
William MCcall
Bresser
T Broaddus

## Notes/Narratives

On April 29 ,2023 at 1641 hours, I, Officer Hansen ▓▓ and Officer King ▓▓ received a call from dispatch regarding an adult male firing gunshots in the area of mile post 15.5. While in route, dispatch advised that Sergeant Marley ▓▓ had spoken to the engineer of train 19, who stated that all subjects left the area. As we were minutes away from the location, dispatch notified us of a pedestrian strike with multiple individuals in the same location of mile post 15.5. Dispatch also advised that a hold was placed on all tracks.

Upon arrival, we observed train 161(3) at mile post 15.8. While walking toward the train, I requested radio to confirm that a hold was placed on all tracks. We then met with Engineer Chris Edgerton, and conductors John Weatherspoon and Timothy Morris. They advised that the train struck two individuals.

While examining the area, we were able to locate one of the subject's torso in the knuckle of the head end of the train. Their was also a set of legs underneath the 5th car of the train. A fatality cover was placed on the head end of the train by PA State Police.

At this time, I stayed at the head end of the train, while Officer King walked toward Highland Station to locate the second subject's remains.

I let Engineer Chris Edgerton and his trainee Dennis Winn know if they needed anything to let me know.

As time passed, the passengers on the train began to express their frustrations. I walked the train up and down with head conductor John Weatherspoon to establish a police presence. Weatherspoon pointed out an individual that was cursing on the phone loudly in the café car, however I was unable to witness any disorderly behavior during my walk through. I then advised Weatherspoon to come get me if any passengers cause further issues.

Moments later, I observed Weatherspoon escorting the male, previously mentioned, off the train. I immediately went over and ordered the male to stand over on the right away, furthest from the tracks. The male was then identified through hard ID as Jose Valentin JR (▓▓▓▓▓▓▓▓▓▓). I then began to gather more information regarding why he was escorted off the train. Weatherspoon advised that the male continued to disobey his orders to stop cursing loudly and arguing with other patrons.

Due to the location and hazardous conditions, I did not allow the removal of Valentin JR. He was ordered to go back on the train and sit down quietly. I issued him a verbal warning to remain from acting disorderly for the remainder of the delay. He complied with my orders and caused no further issues.

From that point on, I remained on board the train to help with crowd control of the onboard passengers.

Upon arrival of the rescue train, myself, Officer Marley #140, and head conductor Weatherspoon helped assist passengers off train 161 and into the rescue train. Train 161 successfully transferred all passengers to the rescue train without further incident.

No further police action taken by this officer.

## Supplement Information

| Supplement Date | Supplement Number | Supplement Type | Supplement Officer |
|---|---|---|---|
| 04/29/2023 20:04 | 23005003-0001 | SUPPLEMENT | |
| Contact Name | | | Supervising Officer |

## Supplement Notes

On 04/29/2023 at approximately 1758 hours, I, Officer Cristian Medina was requested by the NCC to interview the Engineer of Amtrak Train 20, upon arrival in Penn Station, NY. Train Engineer Mr. Sean Gilliam (SAP ████) stated that at MP 15 he observed about 1/2 dozen kids in the gauge of track 4, while his train was travelling East on track 2. Mr. Gilliam was then advised by his conductor that he observed one of the juveniles fire a weapon towards the train.

Mr. Gilliam stated that a week prior he observed a group of juveniles in the ROW around the same location, and he thought that one of the juveniles had a firearm and was pointing it at the train.

Mr. Gilliam stated the time of incident on 04/29 at approximately 1605-1610 hours. He informed me that the head end video camera on Motor 612 recorded the trespasser's at MP15.

Mr. Gilliam's interview was document on this Officer's Body Worn Camera has been labeled as such in Evidence.com.

## Supplement Information

| Supplement Date | Supplement Number | Supplement Type | Supplement Officer |
|---|---|---|---|
| 04/29/2023  16:45 | 23005003-0002 | SUPPLEMENT | |
| Contact Name | | | Supervising Officer |

## Supplement Notes

04/29/2023
1645 Hours

### REASON FOR INVESTIGATION

On the above date and time I was contacted by the National Communications Center and was requested to respond to Mile post 15.1 in Chester, PA for a report of a trespasser strike with multiple fatalities.

### LOCATION

AMTRAK Main line South Mile post 15.1; Gauge of track #3; 425 Engle Street Chester, PA 19013; Delaware County.

### NARRATIVE

On the above date and time I was contacted by the NCC for a report of 2 trespassers being struck by AMTRAK train 161 at mile post 15.1 Main Line South. I arrived on scene at approximately 1850 hours and met with Investigator Fisher (APD). Inv. Fisher informed me that one of the trespassers, a juvenile, had been identified as Jahad Atkinson, but the other juvenile trespasser struck had not yet been identified.

While on scene investigators met with the Chester City Police Chaplin, who advised us that two juveniles were on scene, just outside of the Police perimeter, who stated that they had been with the trespassers when they were struck by train 161. The Chaplin directed investigators towards a male juvenile who identified himself to me as Naiin Buckley (09/16/2010). Buckley was with his mother who had arrived on scene (Sharon Buckley). Investigators asked Sharon Buckley if she would allow investigators to speak to her son about what had occurred and she agreed. Investigators began to question N. Buckley as to who the unidentified deceased trespasser was. N. Buckley stated that the unidentified deceased trespasser was Ahyir Womak. Investigators asked Buckley why they had been trespassing on the tracks and he replied that it was a shortcut for them to travel from the park to where they were going. Investigators also asked Buckley if one of the juveniles had been in possession of a firearm (as this was originally reported to the NCC). N Buckley stated that one of the juveniles had just purchased a black BB gun and they had been at the park shooting trees with it. N. Buckley stated that he did not know where the BB gun was at this time. Inv. Fisher also spoke to another juvenile on scene, in the presence of his guardian, and this juvenile also confirmed the identity of the unidentified deceased trespasser to be Ahyir Womak. Investigators shared this information with the Delaware County medical examiner on scene. The Chaplin then confirmed that both of Harmon's parents were on scene and the medical examiner made notification to them both.

### ATTACHMENTS

Attachments to be uploaded at a later date.

### PHYSICAL EVIDENCE
NA

### CHARGES
NA

### TRAIN DELAYS/ CANCELLATIONS

161: 258 MIN

2253: 116 MIN

87: 120 MIN

97: 57 MIN

163: 38 MIN

2255: 35 MIN

92(28): 260 MIN

80: 198 MIN

90: 29 MIN

158: 168 MIN

126: 248 MIN

192: 188 MIN

156: 261 MIN

135: 82 MIN

57: 51 MIN

168: 194 MIN

These delays were provided by AMTRAK CTEC Assistant Chief Byron Duck.

**Division:** MAN     **Case Number:** 23005003     **Date:** 6/16/23    12:42PM

## Supplement Information

| Supplement Date | Supplement Number | Supplement Type | Supplement Officer |
|---|---|---|---|
| 04/30/2023 01:49 | 23005003-0003 | SUPPLEMENT | |
| Contact Name | | | Supervising Officer |
| | | | |

## Supplement Notes

On 4/29/2023 at approximately 1609 hours, I was advised by the NCC of a report of an individual (No further description) on the tracks shooting a gun. Due to the location and nature of the call, I requested that CTEC and Chester PD be advised and I had Officers Hansen and King respond.

At approximately 1620 hours, I contacted the Engineer of Train 19, Sean Hughes (SAP ⬛⬛⬛⬛). Engineer Hughes advised that he heard the radio transmission from the Engineer of Train 20, soon before entering the area. Engineer Hughes advised that upon entering the area, everyone was GOA. I asked if he saw any evidence of anyone firing a weapon or injured individuals who were in need of medical attention and he advised that he did not. The NCC and responding officers were advised of this update.

At approximately 1631 hours, I was advised via radio by the NCC that Train 161 had struck 2 juveniles in the area of MP 15.3. I immediately had CID notified and responded to the scene. While enroute, I was advised by Officers King and Hansen who were on scene that 2 individuals, approximately 17 years of age based on the engineer's statement were confirmed dead.

Upon arrival on scene, I was advised that 5 juveniles were seen in the area and that 3 successfully exited the track area and fled the scene. It was also reported by local PD that upon fleeing, they responded to a family members residence nearby and reported the incident. I immediately observed the Engine for train 161 had a deceased body with most of the upper half intact stuck in the front knuckle of the engine. It was also reported that the family had already arrived in the area of MP 15.0. I was also advised that this incident involved 2 scenes which were approximately 1 mile apart.

At approximately 1719 hours, I contacted the NCC and requested that an APD New York Officer contact the engineer of train 20 and obtain a statement from the engineer.

While on scene, I contacted Chester PD Sgt. Dingman who advised that one of the deceased may be a relative of the Captain of Chester PD CIU and that she was enroute to the scene.

While on scene, I also contacted Road Foreman Robert Lawton who requested to open 1 track at restricted speed and making noise. I advised that once the bodies were covered and we ensure that track 1 was free of body matter than we can do this. Once the area was cleared and the bodies were covered, track 1 was opened approximately 1814 hours.

While on scene, Road Foreman Preshlock and Train Master O'Brien were contacted and advised of the situation.

At approximately 1830 hours, I was advised by Sgt. Dingman that Chester PD officers were clearing the scene. Chester PD Officer Disyvestro #342 advised that he will be writing an assist report under case number 2023-11603.

Watch Commander Captain Noll was notified and updated via phone.

At approximately 2035 hours, Officer Hansen and I assisted with a passenger transfer to another train set to complete their travels. This was completed without issue.

At approximately 2110 hours, the remaining body matter which was under the center of the consist was removed and tracks 1, 2 and 4 were opened for scheduled speed and service.

At the request of Capt. Noll, I contacted CTEC Supervisor Dave May and requested the trains slow down or make noise for the next couple days as a precaution in case family/friends arrives at the scene. Upon contacting CTEC Supervisor May advised that CTEC would not be able to assist with this request. Capt. Noll was advised. MADN Sgts. were also advised to make additional checks of the area.

Due to the time and location Officer Hansen and I remained on scene until a crew arrived to remove the standing equipment. At approximately 2350 hours, the equipment departed the scene.

## Supplement Information

| Supplement Date 04/30/2023 02:11 | Supplement Number 23005003-0004 | Supplement Type NARRATIVE | Supplement Officer |
|---|---|---|---|
| Contact Name | | | Supervising Officer |

## Supplement Notes

On April 29 ,2023 at 1641 hours, I, Officer Hansen ▮▮ and Officer King ▮▮ received a call from dispatch regarding an adult male firing gunshots in the area of mile post 15.5. While in route, dispatch advised that Sergeant Marley ▮▮ had spoken to the engineer of train 19, who stated that all subjects left the area. As we were minutes away from the location, dispatch notified us of a pedestrian strike with multiple individuals in the same location of mile post 15.5. Dispatch also advised that a hold was placed on all tracks.

Upon arrival, we observed train 161(3) at mile post 15.8. While walking toward the train, I requested radio to confirm that a hold was placed on all tracks. We then met with Engineer Chris Edgerton, and conductors John Weatherspoon and Timothy Morris. They advised that the train struck two individuals.

While examining the area, we were able to locate one of the subject's torso in the knuckle of the head end of the train. Their was also a set of legs underneath the 5th car of the train. A fatality cover was placed on the head end of the train by PA State Police.

At this time, I stayed at the head end of the train, while Officer King walked toward Highland Station to locate the second subject's remains.

I let Engineer Chris Edgerton and his trainee Dennis Winn know if they needed anything to let me know.

As time passed, the passengers on the train began to express their frustrations. I walked the train up and down with head conductor John Weatherspoon to establish a police presence. Weatherspoon pointed out an individual that was cursing on the phone loudly in the café car, however I was unable to witness any disorderly behavior during my walk through. I then advised Weatherspoon to come get me if any passengers cause further issues.

Moments later, I observed Weatherspoon escorting the male, previously mentioned, off the train. I immediately went over and ordered the male to stand over on the right away, furthest from the tracks. The male was then identified through hard ID as Jose Valentin JR (▮▮▮▮▮▮▮▮). I then began to gather more information regarding why he was escorted off the train. Weatherspoon advised that the male continued to disobey his orders to stop cursing loudly and arguing with other patrons.

Due to the location and hazardous conditions, I did not allow the removal of Valentin JR. He was ordered to go back on the train and sit down quietly. I issued him a verbal warning to remain from acting disorderly for the remainder of the delay. He complied with my orders and caused no further issues.

From that point on, I remained on board the train to help with crowd control of the onboard passengers.

Upon arrival of the rescue train, myself, Officer Marley ▮▮, and head conductor Weatherspoon helped assist passengers off train 161 and into the rescue train. Train 161 successfully transferred all passengers to the rescue train without further incident.

No further police action taken by this officer.

## Supplement Information

| Supplement Date | Supplement Number | Supplement Type | Supplement Officer |
|---|---|---|---|
| 04/29/2023  19:30 | 23005003-0005 | SUPPLEMENT | |
| Contact Name | | | Supervising Officer |

## Supplement Notes

Reason for Supplement:

Train strike (fatal) involving two juvenile trespassers at MP 14 WIL.

Details/Actions taken by Investigator:

On 04/29/2023 at 1930 hours, Investigators arrived on scene and assisted the county coroner with clearing the tracks. Investigators also assisted the coroner with the body of the deceased trespasser. While this event was taking place, a TOL was reported near the area, which was investigated and determined the TOL was not criminal in nature.

NO FURTHER ACTION TAKEN

## Supplement Information

| Supplement Date | Supplement Number | Supplement Type | Supplement Officer |
|---|---|---|---|
| 04/30/2023 21:33 | 23005003-0006 | SUPPLEMENT | |
| **Contact Name** | | | **Supervising Officer** |
| | | | |

## Supplement Notes

On 4/30/2023, at approximately 1851 hours Amtrak's National Communications Center dispatched me (WEATHERSPOON ▇▇▇) to MP 15.05 (Engle Street, Chester, PA) for an assist agency call regarding case #23005003. The call was about fragments of human remains located on Engle Street from a train strike on 4/29/2023. Officers form Chester PD and a Detective Chester Housing PD were on scene. Officer Tommy GEROMICHALOS from Chester PD provided me with an evidence bag for the remains. Detective Brian REESER collected the remains from the ground and placed them in the evidence bag that I held. Julia BARRERA-ALVIZURI from the Office of the Medical Examiner (Delaware County) responded to the scene for the remains. The remains were turned over to BARRERA-ALVIZURI after a second search of the area. BWC was activated.

## Supplement Information

| Supplement Date | Supplement Number | Supplement Type | Supplement Officer |
|---|---|---|---|
| 05/01/2023  06:46 | 23005003-0007 | SUPPLEMENT | |
| **Contact Name** | | | **Supervising Officer** |

## Supplement Notes

On 4/29/2023 at approximately 4:50 pm Amtrak Police were advised of a trespasser strike in the area of Mile Post 15.1 located in Chester PA. CID units proceeded to the location. Upon arrival investigators observed Amtrak train 161 on track 3 stopped at a resting point approximately (2) CAT poles, (215 ft) south of mile post 15.7. Chester Police Department and the Delaware County Medical Examiner Justin Arnold were on location.

While processing the scene Investigators observed the torso and head of an unidentified juvenile on the front knuckle of the train engine 653. A left leg was also observed at approximately mile post 15.70 on track 3 underneath train 161. Another body of an unidentified juvenile was located approximately (206 ft.) south of mile post 15.09 between tracks 3 and 4. The point of impact occurred at approximately mile post. 15.09 (Engle Street Bridge). The head end video from train 161 was viewed by Investigators. The video revealed (6) juveniles on Amtrak property. (2) juveniles were walking/running in the gage of track 3. (3) juveniles were standing off the tracks on the right of way near track 4 and another juvenile was running across tracks 2 and 1 as train 161 was approaching.

The student engineer trainee (Dennis Winn) along with his training engineer (Chris Egerton) of train 161 stated they were previously told about trespassers in the area. Winn was already sounding the horn prior to observing anyone on the track area due the report of trespassers. Once the juveniles were observed by the engineer, he stated he applied the brakes and continued to sound the horn. The engineer believes he was traveling approximately 50-60 MPH at the time of impact. The (2) juveniles were walking/running south over Engle Street Bridge in the gage of track 3 when strike occurred. The engineer advised it was approximately 4:30 pm - 5:00 pm at the time of impact. Witten statements were obtained by both engineers and attached.

Investigators were able to locate (3) of the juveniles that were present when the strike occurred as they returned to the scene with adults. In speaking with juveniles Day'on Harmon DOB: 1/10/2011 and Naiin Buckley DOB: 9/16/2010 (With parents/adults present). Harmon advised the (2) juveniles that were struck were identified as; Ahyir Womak DOB: 7/9/2010, and Jahaad Atkinson 6/8/2013, . Upon further investigation, Buckley stated Ahyir Womak was in possession of a black BB gun, and they were shooting it at a park nearby prior to the incident and were using the railroad as a "short cut". However, no BB gun was located on the scene. The Delaware County Medical Examiner's Office Justin Arnold handled the media and delivered the death notifications to the family who began to gather on Engle Street during the investigation. The Medical Examiner removed the (2) bodies from Amtrak property and the tracks were cleared at approximately 9:10 pm.


Womack, Ahyir next of kin:
Kimble, Wydea (484-609-5564, 267-290-9430) - Mother
Womack, Tyrone (484-963-7027) - Father

Atkinson, Jahaad next of kin:
Bryan, Danyel (610-986-2329) - Grandmother
Gordon, Johnesha (267-331-0482) - Aunt
Gordon, Ciani (484-846-8365) - Mother
Atkinson, Shamar (610-563-9394) - Father


Measurements:

Point of Impact (POI): Mile Post 15.09  (Engle Street Bridge)

Train 161 resting point: 3,450 feet south from POI

Juvenile (1) Torso/Head: Knuckle of train 161

Juvenile (1) Left leg: 3,243 feet south from POI

Juvenile (2) Body: 206 feet south from POI

## Supplement Information

| Supplement Date | Supplement Number | Supplement Type | Supplement Officer |
|---|---|---|---|
| 05/02/2023  13:00 | 23005003-0008 | FOLLOW UP | |
| Contact Name | | | Supervising Officer |

## Supplement Notes

05/02/2023
1300 Hours

On the above date and time, I placed a call to the Delaware County Medical Examiner's Office. I spoke to Justyna Rymars and requested the status of their report. Rymars stated that the reports were still being finalized and assured me that she would contact me and release the reports to APD upon their completion.

I also called Chester Police and spoke to Sgt. John Ross, requesting the status of their investigation and reports. Sgt. Ross put me in contact with Captain Morgan of the Chester Police Detective Unit. Captain Morgan stated that she would have their report sent over to me as soon as it was available and advised that should be tomorrow 5/2/23. Captain Morgan also stated that she was made aware of a rumor that a TIKTOK video may have been made by the juvenile trespassers in this case, depicting them shooting a pistol or BB gun at passing trains. Captain Morgan requested information on how to obtain video footage taken from the head end of passing trains during that afternoon. I advised Captain Morgan that the hard drives from train 19 and 20 have been pulled by AMTRAK and were being downloaded and reviewed. I advised Captain Morgan that investigators would follow up with her once the video is made available to us.

# EXHIBIT B

# Incident Report



## CITY OF CHESTER POLICE DEPARTMENT
### 24TH DISTRICT
### 160 E 7TH ST
### CHESTER, PA  19013

**Phone: (610)447-7931**

| | |
|---|---|
| Municipality | **CHESTER CITY (301)** |
| Report Type | **INCIDENT** |

| Incident # | Reference # |
|---|---|
| **2023-11603** | |

| | |
|---|---|
| Location | **500 ENGLE ST - CHESTER 19013** |
| Landmark | |
| Premise | **AIR/BUS/TRAIN TERMINAL** |

| Criminal Code | | |
|---|---|---|
| | Title | : |
| | Section | : |
| | Sub-Section | : |
| | Description | : |

| | |
|---|---|
| Point of Entry | **N/A** |
| Meth. of Entry | **N/A** |
| Patrol Zone | **FLO¹** Grid |
| Reported | **04/29/2023 @ 16:35** (Sat) |
| Discovered | **04/29/2023 @ 16:35** (Sat) |
| Last Secure | **04/29/2023 @ 16:35** (Sat) |

| UCR Codes | | |
|---|---|---|
| **4508** | **DEATHS - SUSPICIOUS DEATHS** | |

| | | | |
|---|---|---|---|
| Received | **16:35** | Dispatched | **16:35** |
| Arrived | **16:35** | Cleared | **20:06** |
| Status | **FURTHER INVESTIGATION** | | |
| Disposition | | | |
| Clear Date | | | |
| Badge | **342 - OFF JOSHUA DISYLVESTRO** | | |

| MO | | |
|---|---|---|
| | Circumstances | **UNKNOWN CIRCUMSTANCES** |
| | Sub-Circumstances | **NOT ENOUGH INFORMATION TO DETERMINE** |
| | Weapons/Tools | |

## Additional Officers

| Officers | | Date | Activity |
|---|---|---|---|
| 327 | OFF TERRENCE BROADDUS | / / | ASSIST |
| 363 | OFC BRETT FOSTER | / / | ASSIST |
| 273 | SGT MICHAEL DINGLER | / / | ASSIST |
| 343 | OFF THOMAS GEROMICHALOS | / / | ASSIST |
| 264 | OFF GERMAN SABILLON | / / | ASSIST |

| Investigating Officer | Signature | Date | Approving Officer | Signature | Date |
|---|---|---|---|---|---|

## Persons Involved

**ATKINSON, JAHAD**

Arrest Date :                                    Disposition Date :

| Role<br>**DECEASED SUSPICIOU** | Incident Classification<br>**4508  DEATHS - SUSPICIOUS DEATHS** | How Charged | Disposition |
|---|---|---|---|

Juvenile Disp.:  / /

| Alias | | | |
|---|---|---|---|
| Age-DOB | **09 - 06/08/2013** | Height | |
| Race | **BLACK** | Weight | **0** |
| Sex | **MALE** | Hair | **BLACK** |
| Ethnicity | **NON-HISPANIC** | Eyes | **BROWN** |
| Marital Stat | | Build | **SMALL** |
| Residency | **Resident** | Complex. | **MEDIUM** |

Home Addr  **222 BROOMALL ST**
                       **CHESTER, PA  19013**

Home Ph #
Work Ph #
Cell Ph #
Other Ph #
E-Mail
School

SSN
Gang
Tattoo
Clothing
GBM Id
-Entered          / /
-Released        / /
OLN/State    /
Injury

Occupation
Addl Addr    **None**

No Photo

**Juvenile!**

Mother          **SIANI VIVIAN DENISE GORDON, 222 BROOMALL ST CHESTER, PA 19013 Ph#s (C) (610)990-9720**

## ATKINSON, SHAMAR

| | Arrest Date : | | Disposition Date : |
|---|---|---|---|

| Role<br>WITNESS | Incident Classification<br>4508 DEATHS - SUSPICIOUS DEATHS | How Charged | Disposition |
|---|---|---|---|

Juvenile Disp.: / /

| Alias | | | |
|---|---|---|---|
| Age-DOB | **11 - 09/24/2011** | Height | |
| Race | **BLACK** | Weight **0** | Home Addr **222 BROOMALL ST** |
| Sex | **MALE** | Hair **BLACK** | **CHESTER, PA 19013** |
| Ethnicity | **NON-HISPANIC** | Eyes **BROWN** | |
| Marital Stat | | Build **SMALL** | Home Ph # |
| Residency | **Resident** | Complex. **MEDIUM** | Work Ph # |
| SSN | | | Cell Ph # |
| Gang | | | Other Ph # |
| Tattoo | | | E-Mail |
| Clothing | | | School |

No Photo

GBM Id
-Entered / /
-Released / /
OLN/State /

Occupation
Addl Addr **None**

Injury

**Juvenile!**

Mother    SIANI VIVIAN DENISE GORDON, 222 BROOMALL ST CHESTER, PA 19013 Ph#s (C) (610)990-9720

## CHAMBERS, MICHAEL JABREE

| | Arrest Date : | | Disposition Date : |
|---|---|---|---|

| Role<br>REPORTING PARTY | Incident Classification<br>4508 DEATHS - SUSPICIOUS DEATHS | How Charged | Disposition |
|---|---|---|---|

| Alias | | | |
|---|---|---|---|
| Age-DOB | **31 - 01/28/1992** | Height **6'09"** | |
| Race | **BLACK** | Weight **190** | Home Addr **1006 BALDWIN ST** |
| Sex | **MALE** | Hair **BLACK** | **213 JOHNSON AVE.,BOOTHWYN,** |
| Ethnicity | **NON-HISPANIC** | Eyes **BROWN** | **PA** |
| Marital Stat | **UNKNOWN** | Build **TALL** | Home Ph # **(610)874-6670** |
| Residency | **Resident** | Complex. **MEDIUM** | Work Ph # |
| SSN | **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** | | Cell Ph # **(610)990-1800** |
| Gang | | | Other Ph # **(610)990-9720** |
| Tattoo | **LEFT ARM "TINA"/ MULTIPLE OF TATT(** | | E-Mail |
| Clothing | | | Employer |

No Photo

GBM Id
-Entered / /
-Released / /
OLN/State **30559279/PA**

Occupation
Addl Addr    **222 BROOMALL ST**
**1211 CURRAN ST. CHESTER,**
**PA**
**MARCUS HOOK, PA 19061**

Injury

Comment Mr. Chambers was seated on the front porch of 2910 west 6th street when he was shot in the upper left leg.

## COLES, ZAY'VION

Arrest Date :        Disposition Date :

| Role WITNESS | Incident Classification 4508 DEATHS - SUSPICIOUS DEATHS | How Charged | Disposition |
|---|---|---|---|

Juvenile Disp.: / /

| | | |
|---|---|---|
| Alias | Height | |
| Age-DOB **09 - 06/15/2013** | Weight **0** | Home Addr **122 W 21ST** |
| Race | Hair | **CHESTER, PA 19013** |
| Sex **MALE** | Eyes | |
| Ethnicity | Build | |
| Marital Stat | Complex. | Home Ph # |
| Residency | | Work Ph # |
| SSN **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** | | Cell Ph # **(610)990-1800** |
| Gang | | Other Ph # |
| Tattoo | | E-Mail |
| Clothing | | School |
| GBM Id | | |
| -Entered / / | | Occupation |
| -Released / / | | Addl Addr **None** |
| OLN/State / | | |
| Injury | | |

No Photo

**Juvenile!**

Father    JOSE RAYMOND CAMACHO, 907 HYATT ST CHESTER, PA 19013- Ph#s (H) (610)800-4453
Mother   JALISA NICOLE MCCALL, 607 JEFFREY ST CHESTER, PA 19013 Ph#s (C) (484)470-3023

## EDGERTON, CHRISTOPHER

Arrest Date :        Disposition Date :

| Role DRIVER | Incident Classification 4508 DEATHS - SUSPICIOUS DEATHS | How Charged | Disposition |
|---|---|---|---|

| | | |
|---|---|---|
| Alias | Height | |
| Age-DOB **- / /** | Weight **0** | Home Addr |
| Race **UNKNOWN** | Hair **UNK/BALD** | |
| Sex **MALE** | Eyes **UNKNOWN** | , |
| Ethnicity **NON-HISPANIC** | Build | |
| Marital Stat | Complex. | Home Ph # |
| Residency **Unknown** | | Work Ph # |
| SSN | | Cell Ph # |
| Gang | | Other Ph # |
| Tattoo | | E-Mail |
| Clothing | | Employer |
| GBM Id | | |
| -Entered / / | | Occupation |
| -Released / / | | Addl Addr **None** |
| OLN/State / | | |
| Injury | | |

No Photo

Case ID: 250402241

## WOMACK, AHYIR HAZZEM

Arrest Date :  Disposition Date :

| Role | Incident Classification | How Charged | Disposition |
|------|------------------------|-------------|-------------|
| **DECEASED SUSPICIOU** | **4508  DEATHS - SUSPICIOUS DEATHS** | | |

Juvenile Disp.: / /

| Alias | | | | |
|-------|---|---|---|---|
| Age-DOB | **12 - 07/09/2010** | Height | | |
| Race | **BLACK** | Weight | **0** | Home Addr **1120 UPLAND ST** |
| Sex | **MALE** | Hair | **BLACK** | **CHESTER, PA  19013** |
| Ethnicity | **NON-HISPANIC** | Eyes | **BROWN** | |
| Marital Stat | | Build | **SMALL** | Home Ph # |
| Residency | **Resident** | Complex. | **MEDIUM** | Work Ph # |
| SSN | | | | Cell Ph # **(267)290-9430** |
| Gang | | | | Other Ph # |
| Tattoo | | | | E-Mail |
| Clothing | | | | School |
| GBM Id | | | | |
| -Entered | / / | | | Occupation |
| -Released | / / | | | Addl Addr **None** |
| OLN/State | / | | | |
| Injury | | | | |

No Photo

**Juvenile!**

| Father | TYRONE WOMACK, 1121 HANCOCK ST Apt A 1117 DORIAN DR CHESTER, PA 19013 Ph#s (H) (484)963-7027 (W) (835)212-9417 (C) (610) |
|--------|----|
| Mother | WYDEIA KIMBLE, 1120 UPLAND ST 2 CHESTER, PA 19013 Ph#s (H) (484)483-8978 (W) (484)609-5564 (C) (267)290-9430 |

### Main Narrative
#### OFF JOSHUA DISYLVESTRO (342)

04/29/2023 23:35 - 342   OFF JOSHUA DISYLVESTRO

On Saturday, April 29th, 2023, at 16:35 hours, I, OFC DiSylvestro #342 along with multiple other Chester City PD Officers were dispatched to 405 Wilson Street, and then to 450 Highland Avenue at the Septa/Amtrak Train station for the report of two juveniles struck by a train. Officers Broaddus #327 and Chester Housing Officer Reeser arrived on scene and confirmed that a male juvenile had been struck and lodged in the front of the train and possibly dragged. At this time, myself and OFC Foster #363 went to the W 5th Street/Engle Street train overpass and witnessed a male and female screaming and pointing at the top of the tracks. They were screaming that a boy was struck and he was a family member.

I then climbed the fence of the overpass and advised the male and female to stay at the bottom of the stairs while making my way to the top. At the top I witnessed what appeared to be a young male juvenile severed in quarters by the waist and limbs. I advised DELCOM and responding Officers that there was another victim at this location. EMS units and responding Officers began to arrive on scene along with CFD. PSP State Troopers arrived to establish a crime scene along with Police from Sector 1 responding to assist with crowd control. Medic 100 Micun arrived on scene along with MICU68, CFD Battalion Chief's Ley and Mcbreen and a time of Death was pronounced at 1646 hours for both juveniles.

24-08 Sgt Dingler #273 and CSI OFC Sabillion #264 arrived on scene and began to make notifications to Detectives and Command Staff. Officers then began to check the tracks for more of the deceased's

body going East and West. OFC Broaddus spoke with Amtrak PD OFC King who provided the name of the train operator who was identified as a Mr. Christopher Edgerton (M/RACE Unknown/DOB: Unknown). OFC Broaddus advised me that Mr. Edgerton was refusing to speak and provide any of his information at this time due to their policy.

Amtrak PD was notified with the following Amtrak Officers responding:

- Criminal Investigator Polaski #519 (302)-685-5942
- Criminal Investigator Fisher (302)-660-9641
- Sergeant Marley (302)-415-0404
- Amtrak PD OFC King

Amtrak Incident #23005003

Medical Examiner Justin Arnold (610)-891-5953 arrived on scene to process the crime scene and take custody of the deceased. Officers assisted ME Arnold with the collection of the bodies.

Once the tracks were cleared I then responded with Captain Morgan and OFC Foster to 222 Broomall Street to speak with the family of one male juvenile, who was identified as a Mr. Jahad Atkinson (B/M/DOB:06-08-2013). Contact was made with his mother, a Ms. Siani Gordon (B/F/DOB:02-05-1995) and notification of her son was made with Captain Morgan.

I also spoke with Ms. Gordon's other son, a Mr. Shamar Atkinson (B/M/DOB:09-24-2011) who stated that he, his brother and his friends were on top of the train tracks taking a shortcut to Memorial Park when they turned around and saw the train. He stated he saw his brother and his other friend "Ahyir" get hit. Mr. Atkinson then stated they ran to 218 Jeffrey Street to his aunt's residence, who was the female I witnessed when I first arrived on scene. Mr. Atkinson stated he did not know the full name's or addresses of his friends, but stated that including him there were 6 in total.

Upon returning to the crime scene, a male identified as a Mr. Tyrone Womack (B/M/DOB:Unknown) attempted to rush the police line and get to the top of the tracks. This male was stopped by police and his family in which it was determined that he may be the father of the other deceased juvenile. This was confirmed with Mr. Ahyir Womack (B/M/DOB:07-09-2010) being confirmed as the juvenile located at W 5th Street/Highland Avenue. ME Arnold then spoke with Mr. Womack along with members of Chester Chaplain Corps.

Amtrak PD advised that they have footage of this incident and would be conducting their investigation. At this time, we cleared with nothing further.

### Supplemental Narrative
#### OFF JOSHUA DISYLVESTRO (342)

SUPPLEMENTAL 04/30/2023 00:15 - 342   OFF JOSHUA DISYLVESTRO

Officers received a call at 1612 hours for the report of a group of juveniles on the train tracks in the area of W 6th Street/Jeffrey Street. The caller, Amtrak PD OFC Andrea advised that a group of juveniles were walking along the tracks with one male holding a firearm.

Officers Broaddus and Reeser checked the tracks from Lamokin to Flower, and Kerlin to Mosley Court,



and Jeffrey Street with OFC Broaddus climbing up to the top of the tracks and advising that they did not witness any juveniles at this time.

---

**Supplemental Narrative**
**OFF GERMAN SABILLON (264)**

SUPPLEMENTAL 05/01/2023 08:58:29 - 264   OFF GERMAN SABILLON

On Saturday April 29th, 2023 at approximately 1635 hours, Chester Police received a call informing that there two pedestrians struck by an Amtrak train in the area of Highland Ave.

At this time Officers working the shift responded to the area of Highland Ave in order to preserve the scene for upcoming investigation. Officer then received information that the possible impact point was somewhere in the area of Engle Street. Officers Disylvestro and Foster responded to that area. Officer Disylvestro climbed the fence and immediately advised that he had a deceased on the tracks. Officer along with assisting agencies secured the scene and provided assistance with crowd control.

At this time I began to process the scene by photographing the area. All photographs were downloaded into the Crime scene P drive.

---

**Supplemental Narrative**
**DET BRIAN POT (302)**

SUPPLEMENTAL 05/03/2023 12:54:39 - 302   DET BRIAN POT

On 5/1/23 Detective Maher and I went to 416 Jeffrey Street to view and download video from the surveillance system. Upon arrival I checked the time on the system against real time. The time on the system was approximately 45 minutes slower than real time. I was able to download footage from cameras 1 and 7 from approximately 1400 to 1600 on 4/29/23.

---

**Supplemental Narrative**
**CAPT EL'LAN MORGAN (223)**

SUPPLEMENTAL 05/05/2023 12:30 - 223   CAPT EL'LAN MORGAN

Mr. Michael Chambers and Attorney Girton came to 24-90 and asked to speak with me.

I met with the two in my office. Attorney Girton explained he is representing Mr. Chambers and his family.

Attorney Girton asked if there was any video footage of the incident, I can give to him.

I explained this is an Amtrak investigation. Amtrak has not released any video to Chester Police Dept.

Any video we have would have to be approved by the DA's office to be release.

---

Mr. Chambers then added his son Zayvion Coles B/M/9 06/15/13 was also on the tracks with his brothers Shamaar and Jahad Atkinson when his brother was hit by the train.

Mr. Chambers and Zayvion information has been added into alert.