IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SIANI GORDON, Personal Representative and Administrator of the Estate of JAHAAD ATKINSON,<br><br>     and<br><br>WYDEIA KIMBLE, Personal Representative and Administrator of the Estate of AH'YIR WOMACK,<br>          *Plaintiffs,*<br><br>     v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK, et al,<br>          *Defendants.* | Civil No. 25-2158 |

**MEMORANDUM**

COSTELLO, J.                                                              **April 8, 2026**

On April 29, 2023, Jahaad Atkinson and Ah'Yir Womack were struck and killed by an

Amtrak train while they were walking on railroad tracks.  The administrators of their estates,

Siani Gordon and Wydeia Kimble ("Plaintiffs"), sued National Railroad Passenger Corporation

("Amtrak"), the Southeastern Pennsylvania Transportation Authority ("SEPTA"), and certain

employees, alleging that their negligence caused the decedents' deaths.  This is the second

lawsuit Plaintiffs have filed related to this accident.  In the first lawsuit, the Court granted

summary judgment in favor of Amtrak.  Amtrak and SEPTA now seek to dismiss this second

lawsuit based on claim preclusion.  SEPTA further argues that issue preclusion independently

bars Plaintiffs from relitigating certain legal determinations.  For the reasons that follow, the

Court will grant both motions and dismiss the Complaint with prejudice.

## I.   BACKGROUND

### A.   The 2023 Lawsuit

On July 27, 2023, Plaintiffs sued Amtrak for negligence and wrongful death. *Gordon v. National Railroad Passenger Corp.*, No. 23-2884. Plaintiffs alleged that Amtrak was negligent in failing to erect or maintain fencing along the tracks and failing to properly police or monitor its tracks. The Honorable Mitchell S. Goldberg granted Amtrak's motion for judgment on the pleadings, dismissing the complaint without prejudice. No. 23-2884, ECF No. 27. Judge Goldberg ruled, among other things, that a railroad has no duty to fence its property and that the attractive nuisance doctrine did not override this rule. *Id.* ¶¶15, 16.

Plaintiffs subsequently filed an amended complaint, asserting six categories of negligence, including: (1) negligent operation of the train, (2) failure to monitor pedestrian safety or respond to pedestrian presence, (3) failure to warn of or address known hazards, (4) failure to maintain safe premises, (5) failure to train or supervise employees, and (6) other general breaches of the duty of care. No. 23-2884, ECF No. 30 at 9-11, 15-17.

Amtrak later moved for summary judgment. Amtrak argued, among other things, that the decedents were trespassers, that they were not in a permissive crossing at the time they were struck, and that Amtrak had no legal duty to erect or maintain fencing along its right-of-way or to police its tracks to prevent trespassers. No. 23-2884, ECF No. 47-1 at 4, 14-24. In response, Plaintiffs abandoned their claims regarding train operation, Amtrak's failure to train employees, and the duty to fence or police the tracks. No. 23-2884, ECF No. 51 at 6, n.1. Plaintiffs maintained, however, that Amtrak was liable because decedents were in a permissive crossing such that they were licensees, Amtrak engaged in willful and wanton conduct, and the tracks where the children were killed were an attractive nuisance. *Id.* at 9-17.

After summary judgment was briefed, new counsel entered for Plaintiffs. The Court denied Plaintiffs' subsequent motions to reopen discovery or voluntarily dismiss the case without prejudice. No. 23-2884, ECF Nos. 55 & 56. During oral argument, new counsel did not disavow prior counsel's statements regarding the abandonment of certain claims but suggested that the amended complaint did not plead the attractive nuisance doctrine. Plaintiffs further conceded that the decedents were not in a permissive crossing, and there was no willful or wanton conduct by Amtrak.

This Court granted summary judgment in Amtrak's favor, summarizing the facts as follows:

> On April 29, 2023, shortly before 4:30 p.m., Ah'Yir Womack and Jahaad Atkinson were struck by Amtrak Train 161 as they were walking on train tracks in Chester, Pennsylvania. The decedents were on an Amtrak bridge over a public street when they were struck. Pedestrians can cross from one side of the tracks to the other by using the public street that runs directly under the bridge where the accident occurred.
>
> However, the decedents were not crossing the tracks when they were struck. Instead, they and several other boys, including S.A. and D.H., were using the tracks as a "short cut" to the park. They walked up a hill to get to the tracks and then walked straight along the tracks. The park was four or five blocks away from where the boys entered the tracks, and the group walked along the tracks for four to ten minutes. As they walked, a woman on the street below yelled at them to get off the tracks, but the group ignored the warning.
>
> There were four sets of tracks, and Train 161 was travelling on Track 3, which was an internal set of tracks. For about fifteen seconds before the accident, D.H. could hear an approaching train's horn. S.A., who was walking directly on the tracks, moved to the side when he saw the train approaching. The decedents, however, did not move from the train tracks as the train approached. The last time S.A. saw the decedents, they were still walking directly on the train tracks.
>
> A video camera on the train captured the accident. The train engineer had activated the train's horn approximately sixteen seconds before impact. The engineer began sounding the horn as the train crossed a series of bridges and before the decedents were visible from the train. Sounding the horn activated a bell and caused several lights on the front of the train to flash. It is not known

> why the decedents did not get off the tracks as the train, with its horn blowing and lights flashing, approached. There is no dispute that the train engineer complied with all rules and regulations governing the use of the horn.  In addition, there is no dispute that Train 161 was traveling below the 110 miles per hour speed limit at the time of the accident and complied with all speed limits leading up to the accident.

*Gordon v. National Railroad Passenger Corp.*, 792 F. Supp. 3d 557, 559-60 (E.D. Pa. 2025) (internal citation omitted).

In granting summary judgment, the Court made several legal determinations.  First, the Court found that the decedents were not in a permissive crossing, because the parties agreed— and video evidence confirmed—that they were walking longitudinally along the tracks, not crossing them.  *Id*. at 564 (explaining "there is no longitudinal permissive way under Pennsylvania law.").  The decedents were therefore trespassers, to whom the only duty owed by Amtrak was to refrain from wanton and willful conduct.  Additionally, a railroad carrier does not have any duty to keep its property safe for entry or use by any trespasser or to give any warning of a dangerous condition, use, or activity.  *Id*. (citing 42 PA. CONS. STAT. § 8339.1(a)).

The Court further found that "any argument that Amtrak acted wantonly or willfully in failing to erect, maintain, or repair fencing, or to police its tracks, is without merit, as Amtrak has no legally recognized duty to take such measures under Pennsylvania law." *Id*. (citing *Scarborough v. Lewis*, 523 Pa. 30, 565 A.2d 122, 126 (1989) ("[I]t long has been held that a railroad has no duty to erect fences on its right-of-way to deter trespassers."); *Laurie v. Nat'l Passenger R.R. Corp.*, 105 F. App'x 387 (3d Cir. July 23, 2004) (citing *Dugan v. Penn. R.R. Co.*, 127 A.2d 343, 349 (Pa. 1956) ("Nor does Pennsylvania law require a railroad to post guards or to police tracks to prevent trespassing.")).

Finally, the Court determined that Plaintiffs could not establish an element of the attractive nuisance doctrine, namely, that children would not realize the risk of the nuisance. *Gordon*, 792 F. Supp. at 566 (citing Restatement (Second) of Torts § 339(c)).  Under Pennsylvania law, "a moving train is not a subtle or hidden danger and its potential for causing serious bodily injury or death to anyone in its path is readily apparent, even to young children." *Id*. (citing *Nixon v. Norfolk Southern Corp.*, No. 05-101, 2007 WL 4190705, at *7-8 (W.D. Pa. Nov. 21, 2007), *aff'd* 295 F. App'x. 523 (3d Cir. 2008)).

### B.      This Lawsuit

While Amtrak's summary judgment motion was pending, Plaintiffs initiated this lawsuit in the Court of Common Pleas of Philadelphia County.  Amtrak removed the case here.  ECF No. 1.  Like the previous lawsuit, this lawsuit arises from the April 29, 2023, accident and asserts the same causes of action for negligence, wrongful death, and a survival action.  *See generally* ECF No. 1-4.  Plaintiffs named Amtrak and several Amtrak employees as defendants and added SEPTA and three "John Does" as additional defendants.  *Id*.

Plaintiffs again alleged that the decedents and several other boys accessed the train tracks through an area with incomplete fencing as a "shortcut" to get to the park.  ECF No. 1-4 ¶¶ 30, 32-33.  The boys then walked along the tracks in the direction of the park.  *Id*. ¶¶ 35-36. Plaintiffs added allegations to the Complaint that the group intended to shoot a BB gun once they arrived at the park and that someone in the area saw the children traveling along the tracks with what appeared to be a firearm, but which was actually a BB gun, and notified the Amtrak police. *Id*. ¶¶ 30, 39-40.  Plaintiffs also alleged in the new Complaint that the foot of one of the decedent's became stuck on the tracks due to a "negligently maintained track" before the

accident.[1]  *Id.* ¶ 51.  Additionally, Plaintiffs added allegations regarding SEPTA, including that SEPTA and Amtrak shared the Northeast Corridor where the accident occurred, and that SEPTA owned the area where the children accessed the tracks.  *Id*. ¶¶ 32, 100.

## II.    LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible if the plaintiff pleads facts sufficient to support a "reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Facial plausibility demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

Assessing plausibility under *Twombly* requires three steps.  *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  First, the Court must "take note of the elements the plaintiff must plead to state a claim."  *Id*. (internal quotations and alterations omitted).  Next, the Court must "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id*. (quoting *Iqbal*, 556 U.S. at 679).  Finally, the Court must accept as true all "'well-pleaded factual allegations,'" draw all reasonable inferences from those allegations, and "'determine whether they plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679) (alterations omitted).  "If the well-pleaded facts do not nudge the 'claims across the line from conceivable to plausible,' the Court must dismiss the complaint."

---

[1]    Plaintiffs stop short of alleging that the decedent's foot remained trapped at the time of the accident likely because, as was discussed in the Court's summary judgment opinion, the video recording of the accident clearly showed the decedents walking longitudinally along the tracks at the moment of impact.  *See supra* at 3-4.

*Lynch v. Tasty Baking Co.*, No. 23-4445, 2024 WL 967842, at *2 (E.D. Pa. Mar. 6, 2024) (quoting *Twombly*, 550 U.S. at 570).

Although issue and claim preclusion are affirmative defenses, a court may consider the preclusive effect of a prior judgment in deciding a motion to dismiss under Rule12(b)(6). *M&M Stone Co. v. Pennsylvania*, 388 F. App'x. 156, 162 (3d Cir. 2010) (internal citation omitted); *Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 280 (3d Cir. 2016). In ruling on such a motion, the Court may consider matters of public record. *M&M Stone Co.*, 388 F. App'x. at 162 ("[I]t is axiomatic that a court must still consider the prior adjudication in order to determine whether issue preclusion bars that plaintiff's claims."); *Hoffman*, 837 F.3d at 280 n. 52 (holding District Court did not err in considering pleadings and judgment from plaintiff's other cases because they are matters of public record); *see also Toscano v. Connecticut Gen. Life Ins. Co.*, 288 F. App'x. 36, 38 (3d Cir. July 30, 2008) (noting that "a court may take judicial notice of the record from a previous court proceeding between the parties").

## III.   DISCUSSION

Both Amtrak and SEPTA contend that Plaintiffs' claims are barred by claim preclusion, and SEPTA argues that issue preclusion independently bars Plaintiffs' claims.[2] The Court addresses these arguments in turn, applying Pennsylvania law to determine the preclusive effect of the prior judgment because it was rendered by this Court sitting in diversity. *See Semtek Int'l*

---

[2] The parties use the terms "res judicata" and "claim preclusion" interchangeably, as well as "collateral estoppel" and "issue preclusion." This follows the traditional usage. *See United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 174 (3d Cir. 2009); *Nationwide Mutual Fire Ins. Co. v. Hamilton*, 571 F.3d 299, 309 n. 11 (3d Cir. 2009). However, the United States Supreme Court has clarified that "res judicata" collectively refers to "issue preclusion" and "claim preclusion." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). For clarity, the Court will use the modern terms "claim preclusion" and "issue preclusion."

*Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001) (holding that federal common law adopts the preclusion law of the state in which the diversity court sits).

### A.    Claim Preclusion

In Pennsylvania, under the doctrine of claim preclusion, "[a]ny final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action." *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995**).** Claim preclusion applies "not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action." *Id*.; *In re Coatesville Area School Dist*., 244 A.3d 373, 379 (Pa. 2021). Claim preclusion requires four elements: "(1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties [or their privies]; [and] (4) identity of the [quality or] capacity of the parties [suing or being sued]." *Dempsey v. Cessna Aircraft Co*., 653 A.2d 679, 680-81 (Pa. Super. Ct. 1995) (*en banc*); *McArdle v. Tronetti*, 627 A.2d 1219, 1222 (Pa. Super. Ct. 1993).

#### 1.    Application to Amtrak

The Court finds that all four elements of claim preclusion are satisfied as to Amtrak and its employees. There is no dispute regarding the first, third, and fourth elements. Plaintiffs challenge only the "identity of the cause of action," arguing that the current Complaint introduces new factual allegations that distinguish it from the prior litigation. The Court disagrees. The "cause of action" element is satisfied because the subject matter and ultimate issues are the same in both actions.

The identity of the "cause of action" is determined by "considering the similarity in the acts complained of and the demand for recovery, as well as the identity of the witnesses, documents and facts alleged and whether the same evidence is necessary to prove each action." *Swift v. Radnor Twp.*, 983 A.2d 227, 232 (Pa. Commw. Ct. 2009); *In re Jones & Laughlin Steel Corp.*, 477 A.2d 527, 531 (Pa. Super. Ct. 1984). A party cannot escape claim preclusion "by varying the form of action or adopting a different method of presenting the case." *Swift*, 983 A.2d at 232. "Generally, causes of action are identical when the subject matter and the ultimate issues are the same in both the old and the new proceedings." *Id*. "[M]inor differences of form, parties, or allegations" are not sufficient to avoid claim prelusion. *BuyFigure.com, Inc. v. Autotrader.com, Inc.*, 76 A.3d 554, 561 (Pa. Super. Ct. 2013) (quoting *Stevenson v. Silverman*, 208 A.2d 786, 788 (Pa. 1965)). Instead, courts consider "whether the ultimate and controlling issues have been decided in a prior proceeding." *Id*.

Here, both lawsuits arise from the same event, namely, the April 29, 2023 incident in which the decedents were struck and killed by a train as they walked along the train tracks. Both lawsuits advance the same legal theories: negligence, wrongful death, and survival action. Both lawsuits involve the same material facts and require the same evidence. Thus, the subject matter and the ultimate issues are the same in both the old and the new proceedings.

Plaintiffs contend that the new Complaint added allegations that render this lawsuit a different cause of action. Specifically, Plaintiffs added allegations to the Complaint that the group of children intended to shoot a BB gun once they arrived at the park, that Amtrak received a report of a person on the tracks with a firearm prior to the accident and therefore had notice that someone might be on the tracks, and that the foot of one of the decedents got stuck at some point prior to the decedents being struck.

9

As an initial matter, none of these allegations are new. Each was raised in the previous lawsuit. *See* No. 23-2884, ECF No. 47-9 at 13-15, 19, 24 (testimony of D.H. mentioning the BB gun and that the foot of one of the decedents was stuck in the track prior to the accident); No. 23-2884, ECF No. 57 (including Amtrak Incident Report detailing Amtrak's response to a report of a person on the tracks with a firearm prior to the accident).

In any event, none of these allegations would make this case a different cause of action. Even if the allegations were new, both cases still share the same subject matter. More importantly, both lawsuits still raise the same ultimate issue, namely, whether Amtrak breached some duty of care owed to the decedents. That issue was decided in the previous lawsuit in favor of Amtrak. Because the Court finds that the causes of action are identical, the judgment in the prior lawsuit precludes Plaintiffs from re-litigating its negligence claims against Amtrak and its employees in this lawsuit.

### 2.    Application to SEPTA

Claim preclusion similarly bars Plaintiffs' claims against SEPTA. As with Amtrak, there is no dispute regarding the identity of the thing sued upon or the capacities of the parties to be sued. Plaintiffs challenge the identity of the cause of action and the identity of the parties. With respect to the identity of the cause of action, Plaintiffs again point to the added allegations already dispensed with above. As previously stated, the core of Plaintiffs' claims is the same in both lawsuits.

With respect to the identity of the parties, Plaintiffs contend that SEPTA is not in privity with Amtrak, because SEPTA was not "involved" in the prior action. However, there is no requirement for a party to be "involved" in the prior action for claim preclusion to bar the subsequent action. Plaintiffs cannot avoid claim preclusion by "shuffling" defendants.

*BuyFigure.com*, 76 A.3d at 561.  Rather, in Pennsylvania, privity between parties to past and present suits "lies when there exists 'mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right.'"  *Robinson v. Fye*, 192 A.3d 1225, 1234 (Pa. Commw. Ct. 2018) (quoting *Montella v. Berkheimer Assocs.*, 690 A.2d 802, 804 (Pa. Cmwlth. Ct. 1997)).  Here, SEPTA and Amtrak shared a mutual interest in the maintenance and operation of the corridor.  Indeed, SEPTA is now defending against the exact same alleged breach of duty raised against Amtrak.  Amtrak's prior defense in the previous lawsuit adequately represented the interests and legal rights of SEPTA in this lawsuit.  Accordingly, SEPTA is in privity with Amtrak and Plaintiffs' claims against it are barred.[3]

**B.    Issue Preclusion**

Under Pennsylvania law, issue preclusion applies if: (1) an issue decided in a prior action is identical to one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with a party to the prior action; and (4) the party against whom the doctrine is asserted had a full and

---

[3]    The Complaint also includes three John Doe defendants each of whom is described as "an unknown individual, corporation, or other business entity" hired or selected by Amtrak or SEPTA to do various tasks related to the fencing.  ECF No. 1-4 ¶¶ 17-25.  To the extent these defendants are Amtrak or SEPTA employees, they are in privity with their respective employers.  *See DeRaffele v. City of Williamsport*, No. 1559 C.D. 2018, 2019 WL 3779708, at *3 (Pa. Commw. Ct. Aug. 12, 2019) (citing *Balent*, 669 A.2d at 313) ("When parties are in privity with one another, they are considered to be identical for purposes of [claim preclusion].").  Because the claims against Amtrak and SEPTA are barred, no claims can proceed against their employees. *See Fogarty v. USA Truck, Inc.*, No. 08-111, 2008 WL 2620166, at *10 (W.D. Pa. June 30, 2008) (observing that if claims against employer are dismissed or barred by claim preclusion "no claim can proceed against the corporation's employee acting within the scope of his employment.").

fair opportunity to litigate the issue in the prior action. *Rue v. K-Mart Corp.*, 713 A.2d 82, 84 (Pa. 1998).

In the previous lawsuit, the Court decided multiple issues identical to those Plaintiffs present here, including whether the decedents were in a permissive crossing, whether the railroad owed a duty related to the fencing, monitoring, or policing of the tracks, and whether the attractive nuisance doctrine applied. The Court issued a final judgment on the merits and determined that: (1) the decedents were not in a permissive crossing and were therefore trespassers; (2) railroads have no duty to erect, maintain, or repair fencing along their tracks or to otherwise police their tracks under Pennsylvania law; and (3) Plaintiffs could not establish each element of the attractive nuisance doctrine as a matter of law. *Gordon*, 792 F. Supp. at 563-65.

Plaintiffs do not contest any of the four issue preclusion prongs. Rather, they suggest that because SEPTA was not a party to the prior lawsuit, its issue preclusion argument must fail. However, Pennsylvania law does not require mutuality of parties for the defensive use of issue preclusion. *Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 51 (Pa. 2005). What matters is that the party against whom issue preclusion is asserted—in this case, Plaintiffs—was a party to the earlier action and had a full and fair opportunity to litigate the issues and lost. *Id*. Here, Plaintiffs were parties to the previous lawsuit and had a full and fair opportunity to litigate these issues. Plaintiffs' original counsel chose not to pursue claims regarding train operation, Amtrak's failure to train employees, and the duty to fence or police the tracks. No. 23-2884, ECF No. 51 at 6, n.1. Plaintiffs' current counsel, despite being given the opportunity to disavow prior counsel's abandonment of claims, expressly conceded that the decedents were not in a permissive crossing and that there was no evidence of willful or wanton conduct on Amtrak's

part.  Accordingly, issue preclusion bars Plaintiffs from litigating issues against SEPTA that the Court already decided in favor of Amtrak.

## IV.    CONCLUSION

Plaintiffs' claims against Amtrak, SEPTA, and their respective employees are barred by claim preclusion and issue preclusion.  Because these doctrines wholly bar Plaintiffs' claims, amendment would be futile.  *See Wallace v. State Farm Mutual Auto. Ins. Co*., No. 20-2264, 2020 WL 5232030, at *3 n. 6 (E.D. Pa. Sept. 2, 2020); *see also Taggart v. Saltz*, No. 20-1638, 2020 WL 5943728, at *6 (E.D. Pa. Oct. 7, 2020).  Accordingly, the Court will dismiss Plaintiffs' Complaint with prejudice.

An appropriate Order follows.

BY THE COURT:

MARY KAY COSTELLO, J.